452 S.E.2d 468

**Michael Thomas JORDAN, Jr.,
Plaintiff Below, Appellee**

v.

**Ruth Ann JORDAN, Defendant
Below, Appellant.**

**No. 21901.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 4, 1994.

Decided Dec. 8, 1994.

James O. Watkins, Jr., Fairmont, for appellee.

Susan K. McLaughlin, McLaughlin and Curry, Fairmont, for appellant.

**PER CURIAM:**

Ruth Ann Jordan appeals the final order of the Circuit Court of Marion County that granted her a divorce from Michael Thomas Jordan, Jr., and awarded her $1 per year in alimony. On appeal, Mrs. Jordan maintains that given the parties' earnings and responsibilities for marital debt, the circuit court awarded her an inadequate amount of alimony. Because the record does not show that the circuit court abused his discretion in awarding alimony, we affirm the circuit court's decision.

After twenty-two years of marriage, Mr. and Mrs. Jordan divorced on December 1, 1992 on the grounds of irreconcilable differences. The Jordans have four children; two are emancipated and the remaining two, twin boys born in 1982, are in Mrs. Jordan's custody, with reasonable visitation by Mr. Jordan. Mrs. Jordan is employed as a teacher in Marion County and in 1990 earned $23,888.88 with a net monthly income of $1,288. Mr. Jordan is employed as a coal miner with Peabody Coal and in 1991 earned $48,290.90 with a net monthly income of $2,870.00 considering voluntary contributions.

Mr. Jordan was ordered to pay $657.32 in child support under the state formula guidelines. Mrs. Jordan and the children can live in the marital home until the twins reach eighteen years. The marital home, valued at $50,000, is subject to a $12,000 mortgage, a $10,000 home equity loan and a $1000 home

improvement loan, which have the following monthly payments, respectively: $257.77, $195.78 and $45.00. Mr. Jordan was ordered to pay the house related loans, which total $498.55 per month. When the twins reach eighteen years, the marital home is to be sold and the proceeds divided equally, except that Mr. Jordan is to be credited with one-half of his payments. The parties are to be equally responsible for the martial home's taxes, insurance and major repairs.

The circuit court ordered the following division of parties' martial consumer debts: Mr. Jordan's debt responsibility is $2,075, with monthly payments of $170.00; and, Mrs. Jordan's debt responsibility is $14,200, with monthly payments of $450.47. Mrs. Jordan's consumer debt includes her automobile's outstanding loan of $12,000 that has a $350.47 monthly payment. Each party retained his and her respective pension funds with the disparity offset by the additional $3,700 in Mrs. Jordan's automobile loan that was used to pay off the debt on Mr. Jordan's automobile.

Mr. Jordan was awarded the 1987 Ford, valued at $1,000, a $1,500 certificate of deposit, the parties' savings of $269 and his United Mine Workers of America pension with a present value of $11,348.52. Mrs. Jordan was awarded the 1990 Pontiac, with a net value of about $2,000[1] and her Board of Education pension valued at $17,777.73.

Except for the family law master's recommendation against any alimony, the circuit court adopted the family law master's recommendations and also awarded Mrs. Jordan $1 per year in alimony. The minimal amount of alimony was awarded because Mrs. Jordan was found to have "sufficient income from her employment, the payment by the Plaintiff of child support and the mortgage and related payments ... [to] equalize the difference in the incomes of the parties."

On appeal, Mrs. Jordan maintains that the circuit court should have awarded her additional alimony because her and the twins' financial needs exceed her expected income and the allocation of debt allows Mr. Jordan to recoup his marital-house-related expenses but affords her no such advantage.

■ "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). *In accord* Syl. pt. 2, *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993); Syl. pt. 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990); Syl., *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985). The circuit court's discretion in determining the amount of alimony is guided by *W.Va. Code* 48-2-16(b) [1882], which lists various factors to be considered to reach "a fair and equitable grant of alimony."[2] In Syl. pt. 2,

---

1. In 1992 Mr. Jordan estimated that the 1990 Pontiac, which cost $15,000 new, had a value between $10,000 to $12,000. Mr. Jordan noted that the car was subject to a loan with a $12,000 unpaid balance.

2. *W.Va.Code* 48-2-16(b) [1984] provides, in pertinent part:

The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen [§§ 48-2-13 and 48-2-15] of this article, as a supplement to or in lieu of the separation agreement:
(1) The length of time the parties were married;
(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;
(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;
(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48-2-32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;
(6) The ages and the physical, mental and emotional condition of each party;
(7) The educational qualifications of each party;

in part, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982), we noted that this *Code* section requires "a circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded. . . ." *In accord Wood, supra,* 190 W.Va. at 455, 438 S.E.2d at 798.

■ In this case, Mrs. Jordan submitted a monthly budget showing expenses of $2,340, or $400 more than her expected income from salary and child support. Mrs. Jordan's budget was based on maintaining the family in its pre-separation life style. Mr. Jordan notes that some of Mrs. Jordan's budgeted expenses were for their adult daughter who lives with Mrs. Jordan (for example, $400 for the daughter's annual car insurance). Mr. Jordan also maintains that although their pre-separation life style was supported by two incomes, two separate households now must be supported. Mr. Jordan notes that the martial assets and debts were equitably divided and that the parties enjoy basically the same net monthly income.

In this case, the record shows that until the twins turn eighteen, Mrs. Jordan has a monthly income of $1,945 from her salary ($1,288) and child support ($657). After deducting her monthly consumer debt ($100) and automobile loan ($350) payments, Mrs. Jordan has approximately $1,495 per month to support herself and the twins. Mr. Jordan earns about $2,870 per month and after deducting his child support ($657), house-related payments ($498) and consumer debt payments ($170), Mr. Jordan has approximately $1,555 per month to support himself.

Mrs. Jordan maintains that the debt allocation favored Mr. Jordan because while he receives one-half credit for his house related payments, no such advantage accrues to her automobile loan. Mr. Jordan notes that the automobile loan was allocated to Mrs. Jordan in part to balance the parties' pension benefits.

Based on our examination of the record we find that although the parties have relatively equal net incomes, Mrs. Jordan's housing costs are minor because of Mr. Jordan's payments; whereas, Mr. Jordan must pay his own housing costs, even if he lives with a relative. We also note that Mrs. Jordan's assumption of the automobile loan was in part to balance her retention of her superior pension benefits. In addition, the record indicates that Mr. Jordan replaced the 1987 Ford and assumed an automobile loan with a $212 monthly payment.

Given this case's circumstances, we find that the circuit court did not abuse his discretion in awarding Mrs. Jordan $1 per year in alimony to preserve Mrs. Jordan's right to seek a modification, if necessary.

For the above stated reasons, the decision of the Circuit Court of Marion County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.