460 S.E.2d 469

Anthony B. CAMPBELL, Plaintiff Below, Appellee,

v.

Pamela D. CAMPBELL, Defendant Below, Appellant.

No. 22679.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided July 11, 1995.

Gregory A. Gaudino, Petroplus & Gaudino, Wheeling, for appellee.

R. Joseph Zak, Charleston, for appellant.

PER CURIAM:

This is an appeal by Pamela D. Campbell (hereinafter "the Appellant" or "the mother") from a December 9, 1994, order of the Circuit Court of Ohio County granting custody of the Appellant's two children to the Appellant's former husband, Appellee Anthony B. Campbell (hereinafter "the Appellee" or "the father"). The Appellant contends that the lower court failed to recognize her as the primary caretaker of the children and failed to follow the proper scope of review of the family law master's determination. We find no error by the lower court and affirm its decision.

I.

Upon the father's request for divorce in January 1991, the Appellant was granted temporary custody of the parties' two children, Heather, born in January 1988, and Anthony, born in November 1989. Based upon allegations made by the Appellant, the father initially denied paternity of the youngest child.[1] Subsequent to blood tests in March 1992 establishing the Appellee's paternity, he has not readdressed the issue of paternity and has sought custody of both children.

Family Law Master Wayne Mielke conducted hearings in July and September 1992, taking the testimony of the mother, the father, and several other witnesses. The family law master entered a recommended order in December 1993, finding that the Appellant was the primary caretaker and further finding that even if the parties shared caretaking duties, it was in the best interests of the children to remain in their mother's custody.

Upon consideration of this matter, the lower court determined that the family law master had an erroneous understanding of the facts regarding the primary caretaker status and had based the determination of primary caretaker to some extent upon the period of time the mother had been granted temporary custody of the children. The lower court further found that the parties equally shared caretaking duties and that the best interests of the children would be served by granting custody to the father. The Appellant has appealed to this Court and alleges that the lower court failed to follow the scope of judicial review set forth in West Virginia Code § 48A–4–20(c) (Supp.1994).[2]

II.

Pursuant to the provisions of West Virginia Code § 48A–4–20(c), the lower court has discretion to follow the recommendation of the family law master or enter an order upon different terms. We recently addressed a circuit court's scope of review of a family law master's decision in *Stephen L.H. v. Sherry L.H.*, No. 22084 — W.Va. ——, —— S.E.2d —— [1995 WL 87940] (W.Va. filed March 6, 1995), wherein we acknowledged the necessity of a limitation on review and set forth guidelines for a circuit court's review of a family law master's decision.

1. The Appellant apparently admitted that she had committed adultery and initially indicated that Anthony was not the Appellee's biological son.

2. West Virginia Code § 48A–4–20(c) provides as follows:

The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;
(2) Contrary to constitutional right, power, privilege or immunity;
(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;
(4) Without observance of procedure required by law;
(5) Unsupported by substantial evidence; or
(6) Unwarranted by the facts.

According to the standard enunciated in syllabus point one of *Stephen L.H.*, "[a] circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of the law to the facts under an abuse of discretion standard." *Id.* at ——, —— S.E.2d at ——, Syl. Pt. 1.

In syllabus point three of *Stephen L.H.*, we explained the following: "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." *Id.*, Syl. Pt. 3. Finally, according to syllabus point four of *Stephen L.H.*, "[i]f ... [the circuit court] is of the view that the findings of fact of a family law master were clearly erroneous, the circuit court may set those findings aside on that basis." *Id.*, Syl. Pt. 4, in part.

In the present case, the lower court specifically found that the family law master committed both factual and legal errors. One important factual error regarded the period during which the mother provided all caretaking duties for Heather. The family law master found that the mother remained at home with Heather from her birth in January 1988 to March 1989, thereby concluding that the mother was the primary caretaker during that one-year two-month period. The evidence in the record, however, reflects that the mother returned to work in March 1988, only two months after the child was born. That finding by the family law master, obviously an important issue in the determination of primary caretaker, was a clearly erroneous factual finding and thus subject to the circuit court's authority to overturn.

Moreover, the record indicates that the father broke his elbow and recovered at home for several weeks after the birth of Heather, assuming many primary caretaking duties during his recovery. Once both par-

ents had returned to work, they alternated shifts to care for the baby. Upon the birth of Anthony in November 1989, the mother undertook part-time employment, and both parties cared for the children.

Furthermore, upon review of the testimony of various witnesses, the circuit court concluded that the family law master had failed to recognize that the father had a stronger emotional bond with the children than the mother. Witnesses testified that the children were more attached to the father and that such attachment was obvious from the family interaction when all four were together. For instance, Patricia Boiney, a police officer who worked with the father, testified that she frequently witnessed the interaction between the father and his children. She felt that the father performed most of the caretaking duties while the parties were all together. Another family friend, Charlotte Brown, testified that the children clung to the father and that he cared for his children and that their mother ignored them. Another witness described the father as both a mother and a father figure, explaining that when both parents were with the children, it was the father who performed most caretaking duties.

The Appellee contends that the family law master legally erred by basing his primary caretaker determination, in part, upon activities of the Appellant which occurred after the divorce was filed and during the time she had temporary custody awaiting a final custody determination.[3] For instance, the family law master found that the Appellant toilet trained Anthony and taught him the alphabet. However, at the time of the divorce, the child was only fourteen months of age and still in diapers. Numerous factual findings were advanced dealing with the time period after the separation and divorce of the parties. We have repeatedly held that the relevant time period for consideration in determining the primary caretaker status of the parents is the time during which the parties resided together prior to the separation and divorce. " 'The primary caretaker is

---

3. The difficulties of this case are exacerbated by the family law master's egregious delay in concluding this matter. Hearings were held in July and September 1992, and a decision was not rendered until December 1993.

**338**

that natural or adoptive parent who, until the initiation of the divorce proceedings, has been primarily responsible for the caring and nurturing of the child.' Syl. Pt. 3, *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981)." Syl. Pt. 2, *Rhodes v. Rhodes,* 192 W.Va. 14, 449 S.E.2d 75 (1994). As Justice Miller noted in his dissent in *Graham v. Graham,* 174 W.Va. 345, 326 S.E.2d 189 (1984) (Miller, J., dissenting), *Garska* "made it abundantly clear that: '[I]t is incumbent upon the circuit court to determine as a threshold question which parent was the primary caretaker *before the domestic strife giving rise to the proceedings began.'* " *Id.* at 347, 326 S.E.2d at 191.

■ As we explained in *Starkey v. Starkey,* 185 W.Va. 642, 408 S.E.2d 394 (1991), the determination of primary caretaker status cannot be made "simply by reference to any one moment of time. It is not merely a snapshot in time taken on the day the divorce proceedings are initiated...." *Id.* at 646, 408 S.E.2d at 398. The lower court in *Starkey* had based its decision upon the fact that one parent had custody of the children for three months prior to the filing of the divorce proceedings. *Id.* We reversed, holding that "[t]he determination of primary caretaker is a task which must encompass, to some degree, an inquiry into the entirety of each child's life, with obvious emphasis on the more recent period of time." *Id.*

■ Although the parents' post-separation involvement with and interest in their children is generally an important factor to examine, it would be inequitable to base the primary caretaker decision upon activities occurring during the time in which the court has granted one parent temporary custody. If the primary caretaker determination were based upon that time, the parent receiving temporary custody would have a significant and unfair advantage in arguing that he or she should be deemed the primary caretaker of the children.

Upon review of the evidence in this matter, we find no deviation by the lower court from the standard of review set forth in West Virginia Code § 48A–4–20(c) and in *Stephen*

*L.H.* Therefore, we affirm the decision of the lower court.

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., sitting by temporary assignment.

FOX, J., sitting by temporary assignment.