474 S.E.2d 465

**George M. BANKER, Plaintiff Below, Appellee,**

v.

**Anne F. BANKER, Defendant Below, Appellant.**

No. 22166.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided May 17, 1996.

Rebecca A. Baitty, Sarasota, Florida, for Appellee.

Richard A. Bush, Bush & Trippel, Parkersburg, for Appellant.

CLECKLEY, Justice:

In this divorce proceeding, Anne F. Banker, the defendant below and appellant herein, appeals a final order of the Circuit Court of Cabell County. She contends the circuit court erred by failing to award her permanent alimony, attorney's fees, and expert witness fees.[1] After an exhaustive and thorough review of the record and the briefs of the parties, we find the circuit court failed to accord proper deference to the special commissioner's recommendation that the defendant receive a nominal alimony award of $1.00 per month; committed error in not properly considering all relevant factors for a substantial alimony award; and did not fully consider factors that mitigate toward granting attorney's fees and expert witness fees. Accordingly, the circuit court's decision is reversed and remanded.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 1956. Five children were born of the marriage, all of whom are now emancipated adults. During the marriage, the defendant performed the tasks of a homemaker and did not work outside the home. The plaintiff's employment history began when he dropped out of high school, following the death of his father, and enlisted in the United States Marine Corps. At the end of his tour of military duty, the plaintiff found employment as a truck driver and salesman with a local Pepsi Cola Company. The plaintiff's industrious work ethic enabled him to eventually become a managing partner of the Huntington branch of Pepsi Cola. The joint diligence and "smart" investment decisions of the parties allowed them to acquire marital assets with a net value of over two million dollars.

During the course of their marriage the parties began to experience problems stemming from an affair the plaintiff was having with his former secretary. This situation reached a critical stage in 1985, and the parties decided to separate. The separation apparently did not last long, and the parties decided to attempt to reconcile their differences in order to salvage their marriage. In spite of their efforts to salvage the marriage, reconciliation was not to be. The parties separated again in 1988 and, in the same year, the plaintiff filed this divorce action.

The special commissioner in this case held numerous hearings regarding the financial situation of the parties. The circuit court adopted the majority of the special commissioner's findings and recommendations as to how the marital assets should be distributed. The only issue on appeal is whether the defendant is entitled to a nominal or substantial alimony award, attorney's fees, and expert witness fees.

The special commissioner found the defendant was entitled to an award of alimony from the plaintiff. This finding was based primarily on the fact that the plaintiff had an affair with his former secretary, which was the cause of the divorce.[2] Additionally, the length of the marriage and the fact that the defendant never worked outside the home were also listed by the special commissioner as reasons why alimony should be awarded.[3]

---

1. The defendant abandoned many of her claims raised in her petition for appeal which were refuted by the plaintiff in his response to the petition for appeal. We will address only the claims briefed by the defendant. *Pote v. Jarrell,* 186 W.Va. 369, 412 S.E.2d 770 (1991).

2. The special commissioner found:

   "Plaintiff has acknowledged his relationship with Judy Gibson. This was corroborated by certain documents which are in the record. Defendant testified that the marriage was 'bro-ken up' by the Plaintiff's relationship with Judy Gibson and the Commissioner so finds. It is, therefore, the finding of the Commissioner that Defendant is entitled to alimony from the Plaintiff."

3. The special commissioner noted:

   "The parties' marriage was in excess of thirty-two years. The parties lived together from the date of their marriage in 1956 until late 1985. The parties reconciled and lived together until their ultimate separation on March 26,

**540**

In considering the amount of the alimony award, the special commissioner noted the substantial amount of assets, both liquid and nonliquid, received by the defendant following equitable distribution. With the latter finding squarely in view, the special commissioner concluded the defendant had received enough money to "maintain a lifestyle approaching the standard of living to which she ha[d] grown accustomed." Therefore, the special commissioner recommended the defendant receive a nominal alimony award of $1.00 per month, with a stated understanding that the award would be subject to review should the economic situations of the parties substantially change.

On the issue of attorney's fees and expert witness fees, the special commissioner recommended that each party bear his or her fees because, following distribution of the marital estate, the financial positions of the parties would be substantially the same. The special commissioner specifically found the defendant would "possess adequate resources of her own to compensate her attorneys, accountants, and pay her related reasonable expenses."

In its final order, the circuit court adopted the majority of the factual findings and recommendations of the special commissioner. The circuit court agreed with the special commissioner that each party should bear their own expenses and attorney's fees. However, the circuit court determined the defendant should receive no alimony award

due to the sizable amount of assets received by her following equitable distribution.

## II.

### DISCUSSION

This case raises two important issues: (1) whether the lower tribunals abused their discretion by not considering relevant factors critical to a determination of alimony and attorney's fees and expert witness fees, and (2) whether the circuit court gave proper deference to the factual findings and recommendations of the special commissioner, as required under *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995). In *Stephen L.H.*, this Court discussed the standard a court should employ when reviewing the findings of fact and recommendations of a family law master or, as in this case, a special commissioner assigned to the case.[4] In Syllabus Point 1 of *Stephen L.H.*, we held:

"A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard."

*See* W.Va.Code, 48A–4–20(c) (1993).[5] *See also,* Syl. Pt. 1, *Hillberry v. Hillberry,* 195 W.Va. 600, 466 S.E.2d 451 (1995); Syl. Pt. 1, *Campbell v. Campbell,* 194 W.Va. 334, 460 S.E.2d 469 (1995); Syl. Pt. 2, *Durnell v. Durnell,* 194 W.Va. 464, 460 S.E.2d 710 (1995). *Stephen L.H.* and its progeny require substantial deference be given to factu-

---

1988; the Defendant, who has been a homemaker and provider of child care for five (5) children throughout her marriage to the Plaintiff, has a high school education, and no outside employment, skills, or training. Defendant has no work experience, has been away from the job market her entire life and has received no income from any job or employment."

4. In this discussion section, we will refer to the special commissioner assigned to this case as a family law master for purposes of clarity.

5. W.Va.Code, 48A–4–20(c), states:

"The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may re-

commit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

"(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;

"(2) Contrary to constitutional right, power, privilege or immunity;

"(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

"(4) Without observance of procedure required by law;

"(5) Unsupported by substantial evidence; or

"(6) Unwarranted by the facts."

al findings and recommendations of a family law master, if such findings and recommendations are supported by substantial evidence on the record as a whole and are based upon a correct application of law. In determining whether the family law master correctly applied the law, our review, as well as the circuit court's review, is *de novo*. *See* Syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).[6] We will now proceed to determine whether the circuit court properly applied these standards to the case under review.

## A.

### *Alimony Award*

■ We begin our task by focusing upon the basics. The factual determinations of the family law master were adopted and ratified by the circuit court. However, on the question of alimony, the circuit court rejected and modified the family law master's recommendation that the defendant receive a nominal alimony award of $1.00 per month. In Syllabus Point 2 of *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992), we held:

"W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the court or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship."

*See* Syl. Pt. 4, *Hillberry v. Hillberry, supra;* Syl. pt. 1, *Durnell v. Durnell, supra;* Syl. Pt. 1, *Hickman v. Earnest*, 191 W.Va. 725, 448 S.E.2d 156 (1994). Absent a finding of a statutory bar to alimony or a finding of substantial fault or misconduct on the part of the

spouse seeking alimony, the determination of awarding alimony is to be based on "the financial position of the parties." *Hickman*, 191 W.Va. at 726, 448 S.E.2d at 157, *citing F.C. v. I.V.C.*, 171 W.Va. 458, 460, 300 S.E.2d 99, 101–02 (1982). We will address the issue of alimony in two parts: (1) nominal alimony, and (2) substantial alimony.

### 1. Nominal Alimony

The recommendation of a nominal award in this case by the family law master was made, in part, so the issue of alimony would be "subject to review in the event of a substantial change in the economic circumstances of the parties." In the single Syllabus of *Savage v. Savage*, 157 W.Va. 537, 203 S.E.2d 151 (1974), this Court held: "Where a final divorce decree made no award of alimony, the divorce decree cannot be subsequently modified to grant alimony." *See also* Syl. Pt. 4, *Holstein v. Holstein*, 186 W.Va. 385, 412 S.E.2d 786 (1991); *Caraway v. Caraway*, 183 W.Va. 225, 229 n. 2, 395 S.E.2d 225, 229 n. 2 (1990); *Zinn v. Zinn*, 164 W.Va. 142, 145, 260 S.E.2d 844, 846 (1979); *dicta, Childress v. Childress*, 156 W.Va. 839, 842, 196 S.E.2d 657, 659 (1973); *Farley v. Farley*, 149 W.Va. 352, 141 S.E.2d 63 (1965). The family law master's decision to recommend nominal alimony was made to avoid the consequences that flowed from *Savage*.

■ As we discuss more fully below, there was clear and substantial evidence supporting the family law master's recommendation of a nominal alimony award. Nevertheless, the circuit court apparently believed no alimony should be awarded in a case such as this, where both parties received such large equitable distribution of the assets. This benchmark of the circuit court is wide of the mark. This Court consistently has taken the position that even where "the parties have relatively equal net incomes," *Jordan v. Jordan*, 192 W.Va. 377, 379, 452 S.E.2d 468, 470 (1994), a court may still "award nominal alimony," *Holstein*, 186 W.Va. at 390, 412 S.E.2d at 791, when the interests of justice

---

6. The standard of review adopted in *Stephen L.H.* was left unchanged by the 1996 West Virginia Legislature. Indeed, the only addition made to W.Va.Code, 48A–4–20(c), was to add the following sentence: "Conclusions of law of the family law master shall be subject to review by the circuit court." *See* S.B. 359, 72nd Leg., Reg. Sess. (1996) (enacted).

would be served. In other words, the balanced distribution of large assets does not conclusively negate consideration of nominal alimony. This fact is merely one to be weighed in the totality of all the factual circumstances that a particular case brings with it.[7]

■■■ We also have made it clear that a circuit court is not free to substitute its judgment in place of the recommendation of the family law master, without articulating how the family law master's recommendation was an abuse of discretion under W.Va.Code, 48A–4–20 (1993). In Syllabus Point 1 of *Higginbotham v. Higginbotham*, 189 W.Va. 519, 432 S.E.2d 789 (1993), this Court addressed this issue in the following language:

"W.Va.Code, [48A–4–20(c) (1993) ], limits a circuit judge's ability to overturn a family law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, Rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known its factual findings and conclusions of law."

*See also* Syl. Pt. 2, *Donohew v. Donohew*, 193 W.Va. 184, 455 S.E.2d 553 (1995); Syl. Pt. 2, *Odle v. Eastman*, 192 W.Va. 615, 453 S.E.2d 598 (1994); Syl., *Feaster v. Feaster*, 192 W.Va. 337, 452 S.E.2d 428 (1994). This is true even if the circuit court would be inclined to make a different determination based on the same evidence.

■■■ Our review of the record reveals sufficient evidence supporting the family law master's recommendation that the defendant should receive nominal alimony: The parties were married for more than thirty-two years; the defendant remained at home to raise five children; the defendant never worked outside the home; and the marriage dissolved in large part because the plaintiff had an affair with another woman. While this divorce was consensual, we previously have held that "even in consensual divorces, where fault or blamelessness is not an issue in determining which spouse shall be charged with alimony, consideration may be given to the inequitable conduct of one party to determine what is a just and equitable alimony award." *F.C.*, 171 W.Va. at 460, 300 S.E.2d at 101.

As to the potential earning capacity of the plaintiff, there is disagreement between the parties. The family law master stated that since the parties' separation, the plaintiff had become a one-fourth owner of a beer distributorship known as 905 Corporation. The plaintiff's interest in the corporation is separate property because he acquired the interest by an unsecured loan in February of 1989 after the separation. The family law master noted the plaintiff had received $197,000 by way of income from the corporation since he purchased his interest.

As support for his contention that the circuit court's decision to deny the defendant's claim for alimony should be affirmed, the plaintiff asserts the record is clear that he retired due to health problems and has no employment income. With the exception of a two-year term as the State Liquor Commissioner at an annual salary of $36,000, the plaintiff maintains he has not worked since 1985. Furthermore, although he did receive approximately $197,000 from the 905 Corporation as documented by the family law master, the payment was a partial principal payment on the outstanding debt of the individual shareholder's liability due to the principal debt retirement. The plaintiff maintains that through the beginning of 1993 the corporation had paid no dividends to stockholders, and its future profitability was uncertain. He alleges that as of January, 1994, his remaining obligation on the corporation debt exceeds $824,000.

■■ We find this evidence was properly before the family law master and the circuit court, and we decline to disturb their findings on the earning capacity of the plaintiff.

---

7. Nominal alimony is not awarded to provide additional income or maintenance but solely for the purpose of leaving open for later resolution the issue of more substantial alimony under the appropriate circumstances. *See Jordan v. Jordan*, 192 W.Va. at 378–79, 452 S.E.2d at 469–70.

Thus, the standard and burden of proof are different from that of the ordinary, substantial alimony award. Nominal alimony may be awarded where there is proof of "uncertainty about one spouse's future earnings, financial condition, or health." Syl. Pt. 5, *Holstein, supra*.

It is sufficient here to hold that the family law master had substantial evidence to support the recommendation of a nominal alimony award to the defendant. We find the circuit court erred when, without offering a justifiable reason, it substituted its judgment for that of the family law master and did not award the defendant nominal alimony. Accordingly, on remand, the circuit court should reinstate the family law master's recommendation to award the defendant a nominal alimony award of $1.00 per month.

▇▇ Finally, before we leave the issue of nominal alimony, we believe it is helpful for future litigation to develop a related alimony issue arising from our construction of W.Va. Code, 48–2–15(e) (1993), which states, in relevant part:

"At any time after the entry of an order pursuant to the provisions of this section, the court may, upon motion of either party, revise or alter the order *concerning the maintenance of the parties*, or either of them, and make a new order concerning the same, issuing it forthwith, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice." (Emphasis added).

The import of this section in the context of reopening a final divorce decree for alimony that was not initially provided for was interpreted in passing by this Court in *Holstein*.[8] For more than thirty years, this Court has held that a party in a divorce proceeding could not reopen the issue of alimony except where the final order did in fact provide for at least a nominal alimony award. A one dollar award was deemed a sufficient nominal amount to continue the circuit court's jurisdiction to reopen the issue at a later time. Thus, in the absence of the nominal award of alimony, either a separate suit or a motion to reopen was barred by the doctrine of *res judicata* or lack of jurisdiction, respectively, after a final divorce was granted. The dicta in *Holstein*, which found the above statute did not authorize making an award of alimony after the divorce was final, was not premised upon any extended analysis or interpretation of the statutory provision itself. Rather, it was a concession to precedent embodied in *Savage*. We believe it is time to look at this statute, not as a passing concession to precedent, but in light of legislative intent.

▇▇ Of course, "[i]nterpreting a statute ... presents a purely legal question" for the Court. Syl. Pt. 1, *West Virginia Human Rights Comm'n v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996); Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dept.*, 195 W.Va. 573, 466 S.E.2d 424 (1995); *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994). We previously "recognized that generally the words of a statute are to be given their ordinary and familiar significance and meaning[.]" *Metropolitan Property and Liability Ins. Co. v. Acord*, 195 W.Va. 444, 450, 465 S.E.2d 901, 907 (1995), *citing Amick v. C & T Dev. Co.*, 187 W.Va. 115, 118, 416 S.E.2d 73, 76 (1992). On a pure question of statutory construction, we must try to determine legislative intent using traditional tools of statutory construction. Syl. Pt. 11, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), *citing* Syl. Pt. 2, *State ex rel. Water Dev. Auth. v. Northern Wayne County Public Serv. Dist.*, 195 W.Va. 135, 464 S.E.2d 777 (1995); Syl. Pt. 2, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992); Syl. Pt. 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995), *citing* Syl. Pt. 3, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984); Syl. Pt. 2, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

▇▇ While our starting point is the language of the statute, we note that in interpreting the terms of our domestic relations statutes specifically, we, in the past, have

---

8. We said in *Holstein*, 186 W.Va. at 389, 412 S.E.2d at 790, that W.Va.Code, 48–2–15(e) "does not ... specifically authorize the court to make an initial award of alimony after entry of the final decree."

taken care not to undermine the statutes' fundamental goals. Recognizing the statutes' varied uniqueness, we consistently have turned back neat legal maneuvers attempted by litigants that were not in keeping with overarching duties, responsibilities, and rights that the West Virginia Legislature intended.

Two considerations weigh heavily in our analysis, and we state them at the outset. First, the dicta in *Holstein* would render the first paragraph in W.Va.Code, 48–2–15(e), superfluous in light of the last paragraph of the same section. The last paragraph provides:

> "In granting relief under this subsection, the court may, when other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of martial property."

The logical conclusion from the language and interrelation of these provisions is that both paragraphs should not be interpreted to provide for modification only if alimony was granted initially in the final divorce order. We refer, of course, to the canon of statutory construction which holds that terms of the same statute are not to be construed so as to be redundant. *Bullman v. D & R Lumber Company*, 195 W.Va. 129, 132, 464 S.E.2d 771, 775 (1995); *Osborne v. Babbitt*, 61 F.3d 810, 813 (10th Cir.1995). This canon is based on the presumption that the Legislature is aware of each term of a statute that is before it, and would not knowingly pass two provisions that do precisely the same thing. If *Holstein* means what it says, then both paragraphs are not only redundant, but may very well impair the effectiveness of either paragraph from achieving the result intended by the Legislature. To the contrary, we believe the substantial difference in the wording of the paragraphs, *i.e.*, to "make a new order concerning [maintenance]" clearly indicates that the reach of the first paragraph is intended to permit any final order to be altered

or modified to provide for more equitable maintenance of either party. We, therefore, conclude that W.Va.Code, 48–2–15(e), permits a party to seek a "maintenance" modification of a final divorce decree, even though the issue was not provided for in the final order.

Second, there is no reasonable justification to continue the senseless legal fiction created in *Savage*. Under *Savage* and *Holstein*, nominal alimony may be awarded at the discretion of the circuit court solely for the purpose of allowing the jurisdiction of the court to continue for later modification should the need arise. Thus, *Savage* and *Holstein* create two classes of litigants. One class is comprised of litigants who are granted nominal alimony at the unfettered discretion of the circuit court which preserves their right to seek later modification. The second class of litigants who, despite justifiable circumstances that may later exist, is given no opportunity to seek alimony because the circuit court's order did not expressly provide the necessary nominal one dollar award. The practical consequence of the construction of this statute in *Holstein* creates inequities between litigants who are otherwise similarly situated as to merit. We do not believe such an anomalous result was contemplated by the Legislature when it enacted this statute. For reasons explained below, we conclude that not only is a different interpretation plausible from that offered in *Holstein*, but also that it follows naturally from a fair reading of the statute and from the decisions of other courts that have confronted similar interpretive issues.

■ Next, we believe the threshold issue to be resolved is what is meant by "maintenance." The term "maintenance" is not defined specifically in the statute. In prior cases, we have "assumed," without more, that "maintenance" referred to alimony. This assumption was under the pernicious cloud of *Savage*. Today, however, as we look at this statute with new and more critical eyes, we believe if "maintenance" is deemed to refer to and include alimony, then it must be concluded that the Legislature intended for the issue of alimony to be raised after a final order, even if the final order made no provi-

sion for such an award. This conclusion is both plausible and reasonable because the statute, on its face, does not limit the context in which a modification may be sought.

Construing W.Va.Code, 48–2–15(e), to embrace "alimony" is not unique or, indeed, even a particularly unusual phenomenon. In considering the question before us, it is useful to refer to our prior precedent where we have viewed the term "maintenance" as being interchangeable with alimony.[9] Other jurisdictions expressly use the term "maintenance" synonymously with alimony.[10] For example, in *Weiss v. Weiss*, 579 So.2d 539, 542 (Miss.1991), the court summed up this issue by concluding: " 'Alimony' and 'maintenance' are merely different words used in differing situations to describe the same thing, viz., the measure of the [spouse's] duty to support." (Citations omitted.) In note 8 of *Van Brocklin v. Van Brocklin*, 635 P.2d 1186, 1190 (Alaska 1981), the court there specifically held it would "construe 'maintenance' as ... synonymous with 'alimony'." (Citation omitted.)

W.Va.Code, 48–2–15(e), like every enactment of the Legislature, should not be read as an unrelated and isolated provision. The conclusion that the term "alimony" should be read as a part of "maintenance" is reinforced by an examination of the structure of the entire article. First, it is clear that the term "maintenance" could refer only to "alimony." We have determined that "maintenance," as used in W.Va.Code, 48–2–15(e), does not refer to "separate maintenance." "Separate maintenance" is an independent cause of action that allows for support of a spouse prior to a divorce. As we stated in Syllabus Point 1 of *Brady v. Brady*, 151 W.Va. 900, 158

S.E.2d 359 (1967), "a divorce decree supersedes a prior decree in a separate maintenance suit between the same parties because it destroys the status on which the separate maintenance rests."

Second, we further have assessed the impact or meaning of "maintenance" to the issue of "child support." We believe that "maintenance" does not relate to "child support" due to one simple fact: W.Va.Code, 48–2–15(e), has a separate provision that expressly deals with modification of a divorce decree for "child support."[11] This being the case, it is evident the Legislature did not intend the "maintenance" provision of the statute to be read in conjunction with the "child support" provision.

"Alimony" has been defined by W.Va.Code, 48–2–1(a) (1992), to mean "the allowance which a person pays to or in behalf of the *support* of his or her spouse ... after they are divorced." (Emphasis added.) This definition neither is uncommon nor does it deviate from ordinary meaning. In Webster's New World Dictionary 815–814 (1988), "maintenance" is said to refer to "maintaining ... support ... means of support or sustenance." We can discern no appreciable difference between "maintenance" as defined in Webster's and "alimony" as defined by the statute. Our finding on this point is consistent with the statutory construction canon "called *noscitur a sociis*, which holds that a word is known by the company it keeps[.]" *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 311 n. 10, 465 S.E.2d 399, 413 n. 10 (1995). (Citations omitted.)

---

**9.** In *Burdette v. Burdette*, 109 W.Va. 95, 99, 153 S.E. 150, 152 (1930), we said: "Alimony is an allowance made ... to maintain and support" a former spouse. *See also* Syl. Pt. 3, *State ex. rel. Cecil v. Knapp*, 143 W.Va. 896, 105 S.E.2d 569 (1958).

We made the following observation in *Brady v. Brady*, 151 W.Va. at 908, 158 S.E.2d at 364: "Apparently from the vast number of decisions and statutes in America attempting to define alimony, support and maintenance, there is no magic in the words themselves. They have been applied interchangeably or restricted to special meanings according to what state attempted to construe them."

**10.** *E.g.,* Mo.Ann.Stat. § 452.335 (1986); N.Y.Dom.Rel.Law, Part B § 236(1)(a) (1986); Vt. Stat.Ann. tit. 15, § 752 (1989).

**11.** The child support provision of W.Va.Code, 48–2–15(e), reads, in relevant part:

"The court may also from time to time afterward, upon motion of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter the order concerning the custody and support of the children, and make a new order concerning the same[.]"

Our review of the statute's purpose and integrated structure convinces us the Legislature intended the term "maintenance," as used in the above statute, to refer to and include alimony.[12] As a matter of policy, it is understandable why the Legislature would want to provide the opportunity for modification of an alimony decision to a class of litigants broader than those who merely had the fortune to have alimony awarded in the initial final order. To the extent that our lower courts have relied on dicta from this Court's decision in *Holstein*, we now make clear that *Holstein* failed properly to interpret the original legislative intent of W.Va.Code, 48-2-15(e), and is rejected on that basis.[13] We, therefore, hold that a circuit court has jurisdiction to hear and rule upon a motion seeking modification of a decree to include alimony, as the ends of justice may so require, even though the decree previously denied alimony or did not address the issue in toto. To the extent that *Savage* and its progeny[14] differ with our holding heretofore, they are expressly overruled.

Our interpretive analysis of W.Va.Code, 48-2-15(e), is consistent with *Van Brocklin*, 635 P.2d at 1189–90, wherein the Alaska Supreme Court construed a similar provision in its domestic law as follows:

"[Alaska Statute] 09.55.210 provides, in part:

"In a judgment in an action for divorce ... 'or at any time after judgment, the court may provide

\*    \*    \*    \*    \*    \*

(3) for the recovery by one party from the other of an amount of money for maintenance ... as may be just and necessary[.]

This section, we believe, expressly authorizes a later award of alimony, even though the original decree ... is silent on the subject." (Citation omitted).

Because neither the Alaska statute nor the West Virginia statute expressly limits the context in which a modification to a decree may be made, it is reasonable to conclude that "alimony" may be addressed after a final decree. More significantly, neither statute says that "alimony" may be addressed after a final decree but only if it was provided for in the final decree.[15] It is not for this Court

---

**12.** Perceived sexism prompted the New York Legislature to harmonize its divorce language by using one term, "maintenance," to refer to spousal support payments. Thus, New York abandoned the term "alimony" and now uses the term "maintenance" exclusively to refer to all financial support. In the statutory commentary to this change, the following is said:

"Essentially, maintenance consists of periodic payments made by one spouse (or former spouse) for, or toward, the support of the other. Maintenance is spousal support [and under] its predecessor, payments for support of a spouse are called 'alimony'. Despite the reforms of recent years, the term alimony may carry with it sexist perceptions and connotations, at least in the general public. Because substantial changes have been made in the law governing spousal support, whatever it is called, it is for the best that the label has been changed in order to red-flag the change in some basic concepts. Moreover, the term 'maintenance' is functional and descriptive, without being loaded down with implied values built up over generations." N.Y.Dom.Rel. Law, Part B § 236, at 224.

**13.** By disagreeing with dicta in *Holstein*, we do not violate the principles of *stare decisis*. This doctrine concerns the *holdings* of previous cases, not the rationales:

"A judicial precedent attaches to a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy." *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 969–70 (3rd Cir. 1979). (Footnote omitted).

*Stare decisis* is the policy of the court to stand by precedent. It is different from the doctrine of *stare rationibus decidendi*—"to keep to the *rationes decidendi* of past cases." Rather under the doctrine of *stare decisis*, a case is important only for what it decides—for the "what" not for "why" and not for "how."

**14.** Syl. Pt. 4, *Holstein, supra*; *Caraway*, 183 W.Va. at 229 n. 2, 395 S.E.2d at 229 n. 2; *Zinn*, 164 W.Va. at 145, 260 S.E.2d at 846; *Childress*, 156 W.Va. at 842, 196 S.E.2d at 659; *Farley, supra*.

**15.** Other jurisdictions have interpreted their domestic relations statutes to allow the issue of alimony to be addressed for the first time after the granting of a divorce. *See Weiss v. Weiss*, 579 So.2d at 540–41; *Cherrington v. Cherrington*, 404 Mass. 267, 534 N.E.2d 1159 (1989); *Van Brocklin*, 635 P.2d at 1189–90; *Woods v. Woods*,

arbitrarily to read into W.Va.Code, 48–2–15(e), that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted. *Bullman v. D & R Lumber Company*, 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken*, 192 W.Va. 383, 452 S.E.2d 699 (1994).

■ As a final note, we add a word of caution to lower courts and litigants. Today's construction of our statute does not in any way change the standard or the burden of proof used to determine whether a modification in a decree is warranted. *See* Syl. Pt. 2, *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982) (criteria for modification of alimony award); *Nichols v. Nichols*, 160 W.Va. 514, 517, 236 S.E.2d 36, 38 (1977) (modification should be denied where litigant "failed to demonstrate a change of circumstances sufficient to justify such increase at present time"). In summary, this opinion merely grants all litigants access to the circuit courts to seek modification or alteration of an initial divorce award as provided by statute.

■ Although what we have said thus far renders an express grant of nominal alimony unnecessary in a final divorce decree, it is still preferable for the party who may seek a later modification to have a request for nominal alimony ruled upon at the initial divorce stage. As this Court has suggested many times, laches is an equitable doctrine based on the maxim that equity aids the vigilant, not those who slumber on their rights. *Puleio v. Vose*, 830 F.2d 1197 (1st Cir.1987). *See* Syl. Pt. 2 *Phillips v. Piney Coal Co.*, 53 W.Va. 543, 44 S.E. 774 (1903) ("[a] court of equity will not assist one who has slept upon his [her] rights and shows no

excuse for his[her] *laches* in asserting them"). For example, where a spouse whose claim of alimony might be statutorily barred, therefore at the time of the divorce action asserts no claim for alimony, he or she should not be able, under today's decision, to seek a post-decree modification ten years later when all evidence of his or her wrongdoing has been lost or destroyed. A tactical decision to forego seeking alimony at the time the truth may be readily and easily ascertained will warrant the presumption the party has waived his or her right to alimony.[16] To be explicit, we hold that when a party to a divorce action neglects to assert a claim of alimony for an unreasonable and unexplained length of time and other circumstances cause prejudice to the adverse party, relief should be denied on the grounds of laches. However, the mere lapse of time is not enough to invoke the doctrine. *See Bank of Marlinton v. McLaughlin*, 123 W.Va. 608, 17 S.E.2d 213 (1941). For laches to apply, the circuit court must consider the circumstances surrounding the delay and any disadvantage and prejudice to the other party caused by the delay. *See State Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 764, 466 S.E.2d 827, 832 (1995). Prejudice here is strictly confined to the issue of evidence: Has the length of the delay caused critical or dispositive evidence to be lost, destroyed, or otherwise made unavailable?

By asserting a claim for nominal alimony and requesting the lower court to enter an order thereon, it serves notice on and gives the adverse party the opportunity to make an adequate record of his or her defenses. This same record could be used later as an evidentiary basis to defend any subsequent request for modification of the final divorce decree.

■ To achieve the fair and equitable administration of this statute, our interpreta-

---

285 Ark. 175, 686 S.W.2d 387, 389 (1985); *Smith v. Smith*, 60 Misc.2d 692, 303 N.Y.S.2d 193 (N.Y.Fam.Ct.1969); *Kase v. Kase*, 18 N.J.Super. 12, 86 A.2d 587 (1952); *Veino v. Veino*, 96 N.H. 439, 78 A.2d 522 (1951). *See generally* Annot., 43 A.L.R.2d 1387, 1418–21 (1955).

**16.** The obligation to make a record is not a one-way street. If at the time a divorce is in litigation either party knows of or should have reason

to know of a statutory bar to alimony or substantial fault by a party in causing the divorce, but neither issue is dispositively addressed in the litigation, then the party with such knowledge should make a proffer of evidence for the record on the issue. Failure to vouch the record on this issue prior to entry of a nonalimony divorce decree could effectively preclude raising the issue in a post-decree alimony proceeding.

tion of W.Va.Code, 48–2–15(e), is not to be applied retroactively. Further, today's ruling permitting the reopening of alimony awards has no application where the parties have entered into an express agreement as to alimony that is inconsistent with this decision. W.Va.Code, 48–2–16 (1984), provides in pertinent part:

"The separation agreement may contractually fix the division of property between the parties and may determine whether alimony shall be awarded, whether a court shall have continuing jurisdiction over the amount of an alimony award so as to increase or decrease the amount of alimony to be paid, whether alimony shall be awarded as a lump sum settlement in lieu of periodic payments, whether alimony shall continue beyond the death of the payor party or the remarriage of the payee party, or whether the alimony award shall be enforceable by contempt proceedings or other judicial remedies aside from contractual remedies. Any award of periodic payments of alimony shall be deemed to be judicially decreed and subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to the contrary set forth in the court approved separation agreement or the order granting the divorce."

Therefore, an agreement to preclude subsequent modification of alimony is enforceable if it is either made part of a judicially approved separation agreement or it is expressed in the order granting the divorce. In either situation, the language of the agreement must be clear and unambiguous.

### 2. Substantial Alimony

We now proceed to address the issue of substantial alimony. The defendant contends she was entitled to substantial alimony in view of the nonincome-generating capacity of some of the marital property distributed to her. The family law master concluded "[t]he [p]laintiff is found to have the ability to pay *substantial alimony,* if appropriate." (Emphasis added.) Notwithstanding this finding, the family law master went on to conclude only nominal alimony would be appropriate because the defendant received sufficient equitable distribution to "maintain a lifestyle approaching the standard of living to which she ha[d] grown accustomed." As previously discussed, the circuit court rejected alimony outright. The Legislature established in W.Va.Code, 48–2–16(b) (1984), sixteen factors which must be considered "in determining the amount of alimony." The record in this case demonstrates the family law master ably took into consideration all the statutory criteria, except the fifth criterion, in making his decision on the issue of alimony. The circuit court's final order and the record fail to show that it considered any of the statutory criteria in determining that no alimony should be awarded.[17]

The decision to grant or deny alimony is reviewed by this Court for an abuse of discretion. Although discretion gives the family law master a range of choices, it is not without limit. An abuse of discretion occurs in three principal ways: (1) when a relevant factor that should have been given significant weight is not considered; (2) when all proper factors, and no improper ones, are considered, but the family law master in weighing those factors commits a clear error of judgment; and (3) when the family law master fails to exercise any discretion at all in issuing the order. We are unable to determine from this record that the family law master or the circuit court gave adequate consideration to one of the significant factors in the alimony determination. As we stated in *Burnside,* 194 W.Va. at 275, 460 S.E.2d at 276, "[f]indings of facts are adequate only if they are sufficient to indicate the factual basis for the ultimate conclusion. If an order lacks adequate detail, the case will be re-

---

17. The circuit court's order tersely noted: "The Court finds that due to the assets distributed to the parties, which at the present time is valued at more than $1,000,000, no alimony should be awarded to the defendant herein." This swift treatment of such a critical area is in direct conflict with Syllabus Point 8 of *Wyant v. Wyant,*

184 W.Va. 434, 400 S.E.2d 869 (1990), where we held in relevant part: "Rule 52(a) of the West Virginia Rules of Civil Procedure requires a trial court in a divorce proceeding to state on the record findings of fact and conclusions of law which support its decision." (Citation omitted.)

manded for additional specificity." (Citation omitted.) Of course, we do not mean to suggest that in all cases a family law master must consider all relevant factors before exercising its discretion. To be specific, "it is not necessary to make specific findings as to each statutory factor recited but only those applicable and appropriate to the case." *Burnside*, 194 W.Va. at 275 n. 30, 460 S.E.2d at 276 n. 30.

In considering the amount of alimony to be awarded, the fifth criterion of W.Va.Code, 48–2–16(b), provides that consideration must be given to "[t]he distribution of marital property to be made ... insofar as the distribution affects or will affect the earnings of the parties and ... their need to receive alimony[.]" We have not had previous occasion to examine this particular provision. This provision requires a reasonable analysis of the manner in which the distribution of marital property affects the earnings of the parties. The defendant contends, and the record supports her assertion, that neither the family law master nor the circuit court made an analysis to determine the amount of actual income the defendant could plausibly generate from the marital assets distributed to her. There was merely an assumption that, because the property distribution included substantial "liquid and nonliquid assets," the defendant would be able to maintain the style of life she was accustomed to during the marriage. The statute requires more than an assumption, it commands analysis and then application. We, therefore, feel compelled to remand the issue of substantial alimony back to the lower court for a specific, factual analysis of the income-generating capacity of the defendant's marital property, insofar as whether or not it is sufficient to maintain her at the standard of life she was accustomed to during the marriage. Where the marital property is shown to be lacking in sufficient income-generating capacity, more than nominal alimony may be appropriate. In considering the impact of assets received as a result of equitable distribution on the amount of alimony to be awarded, it is appropriate to consider not only the earning capacity of that property but also the economic security created by the equitable distribution of that property to the party. We pointed out in *Bridgeman v. Bridgeman*, 182 W.Va. 677, 680, 391 S.E.2d 367, 370 (1990), that "[a]s a general rule, a significant alimony award is more appropriate after a long marriage than after a short one." The parties here were married from 1956 until the decree entered on April 2, 1993. We believe this may properly be considered a long marriage.

### B.

#### *Attorney's and Expert Witness Fees*

The second issue raised by the defendant concerns her claim for attorney's fees and expert witness fees. The family law master and the circuit court both determined each party should bear their own expenses and attorney's fees because each party received the same amount of assets. The defendant claims she should be entitled to collect her attorney's fees and expert witness fees incurred during the divorce litigation. *See* W.Va.Code, 48–2–13(a)(6)(A) (1993).[18]

There is no need to tarry here. Having read the record and carefully considered the parties' briefs, we are not hesitant in holding that it was an abuse of discretion to deny the defendant reasonable attorney's fees and expert witness fees. Consequently, we reverse the circuit court's decision and remand this matter for a hearing and a determination consistent with the foregoing.

---

18. W.Va.Code, 48–2–13(a)(6)(A), states:

"The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs. An order for temporary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal is taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal."

The defendant makes two arguments in support of her claim for attorney's fees and costs. First, she contends that throughout the prolonged proceedings, she was forced to "fight, in effect, 'with one hand tied behind her back'" because the defendant had access to all the marital funds and documentation of the marital assets. She alleges she was forced to "beg" and "cajole" the production of records and information. Second, the defendant contends she was forced to "make do" with a $50,000 advance, a share of the plaintiff's noncompetition agreement, and a partnership share of some rental income while the defendant's salary approached $200,000 per year.

The plaintiff states the defendant misrepresents her income. He claims her assertion that she was "ultimately required to support herself" with limited income for over four years is not supported by the record. In addition to the $50,000 lump sum payment she received following the preliminary hearing, the defendant received partnership income in excess of $40,000 per year from 1531 Realty. The record shows that during the years 1989 through 1993 the defendant's income from 1531 Realty alone was in excess of $190,000. At a hearing held in June of 1990, the defendant admitted receiving in excess of $160,000 in income since the preliminary order was entered in the case two years earlier. In 1993, the defendant began receiving proceeds from the plaintiff's noncompetition agreement with Pepsi–Cola totalling $100,000 per year. These payments are to continue until 1997. The circuit court stated in its April, 1993, order that the defendant had received over $250,000 from the marital estate. Finally, during the pendency of the litigation, the plaintiff made all the required interest payments on the marital loans, including the Barboursville home in which the defendant resided. The circuit court stated these payments exceeded $1,400,000. The plaintiff also paid the parties' outstanding debts including credit card bills.

■ Both the arguments of the parties and the rulings below miss the relevant issue brought out by the facts of this case. In *Sellitti v. Sellitti*, 192 W.Va. 546, 453 S.E.2d 380 (1994), we recognized that under W.Va.

Code, 48–2–13(a)(6)(A), a circuit court has the authority to order the payment of reasonable attorney's fees and costs. We held in Syllabus Point 15 of *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), that "[r]eimbursement for reasonable expert witness fees is permissible under similar financial considerations as those used in awarding attorney's fees." Furthermore, in *Hillberry v. Hillberry*, 195 W.Va. at 606–07, 466 S.E.2d at 457–58, we clearly held that "an examination of the relative fault of the parties in the deterioration of the marriage is a proper consideration in assessing attorney fees [and expert witness fees]." The circuit court's determination to deny the defendant attorney's fees and expert witness fees was narrowly focused upon the relative financial parity in the distribution of marital assets. The determination of this issue is to be accorded far greater scope than that given by the circuit court. The evidence is sufficient to support a finding that this marriage would not have been brought to this point but for the plaintiff's continued affairs with his former secretary. Furthermore, the evidence in this case reveals incontestably that the defendant entered this proceeding with clean hands. In divorce cases, the "fault" factor is premised upon the notion that it is unfair to force a litigant to pay for the cost of litigation that is wholly caused by the misconduct of the opposing party. Yet, neither the family law master nor the circuit court gave "fault" any reasonable or fair consideration. Thus, we find the failure to give sufficient consideration to a significant factor constitutes an abuse of discretion requiring a remand for further consideration. Upon remand, it must be determined whether the defendant is entitled to have the reasonable cost of her attorney's fees and expert witness fees, including the cost of prosecuting this appeal, but only after considering all the appropriate factors, including the fault of the plaintiff.

■ In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors,

including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

As a final matter, we note the circuit court expressed concern over the amount of some of the items the defendant listed in her efforts to obtain attorney's fees and expert witness fees.[19] As guidance to the circuit court in addressing this issue upon remand, we refer the court to our holding in Syllabus Point 4 of *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986), wherein we held in part:

> "The reasonableness of attorney's fees is generally based on broad[ ] factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due acceptance of the case; (5) the customary fee; ... (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*See Bettinger v. Bettinger,* 183 W.Va. at 543 n. 28, 396 S.E.2d at 724 n. 28.

On remand, the circuit court may examine these factors in determining the reasonableness of defendant's attorney and expert witness fees, and may incorporate its determination in the award of attorney and expert witness fees.

### III.

### CONCLUSION

Based on the foregoing, the decision of the Circuit Court of Cabell County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

19. The circuit court found the defendant's itemized fees and expenses were unreasonable:

"The court would note that the bill from Charles Crosby, an accountant in South Carolina, submitted herein for $65,263 and the bill of Marvin Mitchelson, an attorney from California in the amount of $45,412 are not only exorbitant but obscene. The Court would note that Mr. Mitchelson's air fare and hotel amounted to $4,316 and his charge for travel time from Los Angeles to Charleston is $5,250."