584 S.E.2d 906

**Shirley Hunt BRALEY, formerly known as Shirley B. Hunt, Plaintiff Below, Appellee,**

v.

**Roger L. HUNT, Defendant Below, Appellant.**

No. 30849.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided June 25, 2003.

Dissenting Opinion of Justice Maynard July 3, 2003.

Loren B. Howley, Esq., Grantsville, for Appellee.

Charles Phalen, Jr., Esq., Hunt & Serreno, Charleston, for Appellant.

PER CURIAM.

In this case we affirm in part and reverse in part a decision by the Circuit Court of Clay County. The circuit court ordered a continuation of spousal support payments, and we affirm this ruling. The circuit court additionally ordered the establishment and funding of a trust; we reverse this portion of

the court's ruling. We remand other issues for the lower court's consideration.

## I.

The appellant, Roger L. Hunt, and the appellee, Shirley Hunt Braley, were married in 1970, and were divorced by a court order dated May 12, 1989. The parties resumed living together in 1991, but separated again, this time finally, in 1992. They divided various property items and interests in connection with their separation. Included in this division was a business that apparently was sold at some point after the 1989 divorce date.

The appellee contends that the parties came to an agreement in 1989 that the appellant would pay spousal support to her for the rest of her life, even if she remarried. She contends that she accepted this arrangement in 1989 specifically in return for giving up her full 50% share of the marital estate—and more particularly, her share of the business. The appellee contends that the appellant again made a promise of lifetime support in connection with the parties' final separation.

 This agreement was not reflected in the parties' original divorce decree, but it is reflected in an agreed order, entered by the circuit court on October 4, 1991, requiring the appellant to pay the appellee $2,000.00 a month in spousal support "for the remainder of [the appellee's] life or until the monies in a trust fund set aside for her benefit has been exhausted, and shall continue even in the event of the remarriage of [the

appellee]." The petition accompanying this order recites that the appellant had made such a promise in connection with the parties' original divorce.[1]

The appellant paid the appellee $2,000.00 a month thereafter for approximately eight years. He also established a trust fund that was under his sole control. The trust fund was entirely revocable by the appellant; and the appellant appears to have removed a substantial amount of money from the fund in transactions unrelated to paying support to the appellee—in other words, the monthly payments that the appellant made to the appellee did not necessarily come from the trust fund.

The appellant stopped paying the appellee $2,000.00 monthly in spousal support in 1999. The appellee then filed a contempt petition, and also therewith sought an increase of the monthly support amount to $2,750.00 per month. On May 3, 2000, the appellant paid the appellee $11,000.00 to resolve the contempt petition. He never made another support payment. Meanwhile, in December of 1999, the appellant filed a petition to modify the 1991 agreement; this petition was heard before a family law master, whose ruling was appealed to the circuit court.

The appellant contended principally in his petition that the trust fund was exhausted, and that therefore he was relieved of any duty of spousal support. He also contended that the 1991 order was void *ab initio*, because the circuit court had "no jurisdiction"

---

**1.** It appears that this agreed order and accompanying petition were prepared and presented to the court by a lawyer who had worked for the appellant, and the order was signed and approved by the appellee in this lawyer's office. The order, as presented to the court, bore the purported signatures of the appellant and appellee. In connection with his challenge to the continued payment of spousal support in the instant case, the appellant presented expert testimony that the signature of the appellant's name on the order was made by someone other than the appellant. The lawyer in whose office the order was prepared and signed by the appellee has apparently stated that he has no recollection of events surrounding the order. The undisputed evidence shows that the appellant asked the appellee to sign the order at the lawyer's office, and that thereafter the appellant and appellee acted

in reliance upon and conformity with the order's terms for more than eight years (the appellant says that he did so because the lawyer in question told the appellant he had to). Whether the appellant signed the order personally, authorized or ratified its signature on his behalf, or otherwise, the circuit court concluded and we agree that the appellant is estopped—by his conduct and his representations, and by the parties' reliance thereon—to deny the order's legal force and effectiveness. We observe that because the parties' agreement and the court's order do not provide for the general spousal support obligation in question to continue beyond the death of the appellant, the principles embodied in *W.Va.Code*, 48–6–202 [2001] dictate that such support obligation will cease upon the appellant's death.

to modify the 1989 order by adding a provision regarding spousal support.[2]

The appellee responded to the petition by opposing its requested relief, and by reiterating a request for increased monthly support payments. The appellee contended that the appellant had deliberately taken money out of the trust fund account, which had approximately $233,000.00 in it prior to 1999, in order to make the "exhaustion" claim. The appellee also argued to the lower court that the trust fund established by the appellant was a revocable trust fund for the appellant's benefit, whereas the October 1991 order required that the appellant establish a trust fund for the appellee's benefit. The appellee argued that the appellant's failure to establish such a fund was a breach of his fiduciary duty, and the appellee asked that the appellant be required to fund a proper trust fund for her benefit.

The family law master[3] who heard the matter agreed with the appellant's exhaustion argument, and ordered that the appellant be excused from further spousal support payments. Upon review by the circuit court, the court disagreed with the family law master's ruling. The circuit court ruled that the appellant had agreed to pay spousal support to the appellee for her lifetime, and that the trust fund had been improperly "exhausted." The circuit court required the appellant to place $233,000.00 in a trust fund for the appellee's benefit, to be paid out at $2,000.00 a month. The circuit court denied the appellee's request for attorney fees and costs, and did not address the appellee's request for an increase in support, or the issues of support arrearages and interest.

## II.

■ The appellant's objections to the lower court's rulings all involve issues of law. "Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed de novo. The sufficiency of the information presented at trial to support a finding that a constitutional predicate has been satisfied presents a question of law." Syllabus Point 1, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

■ On the issue of the lower court's jurisdiction in 1991 to enter an order regarding spousal support, the appellant cites us to *Savage v. Savage*, 157 W.Va. 537, 203 S.E.2d 151 (1974). In *Savage*, which was overruled by *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), we ruled that a circuit court did not have jurisdiction to re-open a divorce proceeding *on the motion of one party* to order spousal support (called "alimony" in that opinion), if such support had not been addressed in the original divorce decree.

When we overruled *Savage* in *Banker*, we did so prospectively only—in order not to disturb the settled expectations of those who had relied upon the finality of divorce decrees issued prior to our decision in *Banker*. However, nothing in *Savage* or *Banker* operated to prohibit a party from *voluntarily* assuming the legally enforceable obligation of paying spousal support, by agreeing to modify a prior divorce decree that was silent as to spousal support.

Addressing this issue, the circuit court observed in the instant case that while the parties may have engaged in some procedurally unconventional conduct in this case, they clearly made and acted upon certain agreements, and they were estopped from denying those agreements' legal effectiveness. We agree with the circuit court, and conclude that the 1991 court order modifying the divorce decree and providing for lifetime spousal support for the appellee is not subject to a jurisdictional challenge under *Savage*, based upon the silence of the 1989 decree on the question of spousal support.

---

2. The appellant also attacked the 1991 order based on his claim that his signature on the 1991 order was not genuine; we address that contention in note 1 *supra*.

3. Pursuant to *W.Va.Code*, 51–2A–1 [2001], the family law master system was replaced by a Family Court system, effective and operable on January 1, 2002.

█ We also agree with the circuit court's conclusion that the appellant has a continuing duty to pay spousal support under the 1991 order, despite the apparent recent "exhaustion" of the trust fund account that the appellant established. However, we reverse the circuit court's order insofar as it requires the appellant to establish a new trust fund for the appellee's benefit.

Our reasoning on this issue is as follows: What can be most certainly deduced and gained from the 1991 order is that the parties had reached a definite, certain, and bargained-for agreement that the appellant would pay spousal support—then-established in the amount of $2,000.00 per month—to the appellee, whether or not she remarried, for the remainder of her life.

The reference to a trust in the agreed order was made in connection with the assumption of that duty of support by the appellant. But because the order uses only vague and cursory language in referencing the trust, the nature, terms, amount, and all other aspects of the trust are entirely uncertain and speculative.

The inadequacy of the language in the order regarding a trust can be seen by considering a hypothetical two-part scenario: first, the appellant sets up a trust fund in the amount of $4,000.00; pays $2,000 monthly spousal support from the fund for two months; then second, the appellant claims to be excused from any further support obligation because "the trust" is "exhausted." Such a claim would be ludicrous, in light of the appellant's promise of lifetime spousal support; but because the order's language relating to a trust is cursory and vague, the argument could be colorably made under that language.

Additionally, one cannot go outside the vague and cursory language of the order to find facts or conduct that would make the terms of the trust more definite and concrete. The amount of money in the trust varied substantially over time. Substantial sums of money from the trust were apparently used over the years for matters unrelated to spousal support; and support payments were apparently made from funds other than those in the trust. The appellee apparently never knew anything specifically about a trust—she simply received her monthly support payments.

Under these circumstances, we think that the circuit court erred in requiring the creation of a trust, when neither the parties' agreement nor their conduct gives meaningful guidance as to what the specific terms of such a trust should be. We conclude that the better and less inherently speculative approach is to view the trust language in the 1991 agreed order as surplusage, that was tangential to the core purpose of the agreement—the agreed-upon payment of lifetime spousal support by the appellant for the appellee—and that was effectively made a nullity by the conduct of the parties. We therefore reverse that portion of the circuit court's order that requires the appellant to set up a trust for the appellee's benefit.

The appellee argues on cross-appeal that the circuit court erred in failing to consider her request to modify and increase the appellant's spousal support obligation, when the evidence showed (the appellee contends) that the appellant could afford, and that the appellee needs, increased support. We believe that the circuit court understandably declined to address this issue, in light of the other complex predicate issues before the court. The appellee may re-present this issue to the lower court upon remand.

The appellee also argues that the circuit court erred in not requiring the appellant to pay spousal support arrears from May 2000 forward, with interest. W.Va.Code, 48–1–244(1) [2001] states that interest accrues on unpaid spousal support at 10% per year. Insofar as the circuit court's ruling does not clearly award arrears or interest, we conclude that it should be modified to do so.

The appellee also contends that she should not have to pay her own costs, including attorney fees, when the evidence showed that: (1) the appellee's costs were incurred as a direct result of the appellant's inequitable conduct; (2) the appellant can afford to pay; and (3) the appellee cannot afford to pay.

On this issue, the appellee further argues that these proceedings began as a result of

the appellant's deliberately draining the trust fund and refusing to pay spousal support; that the appellant failed to make full and accurate financial disclosures and gave misleading and evasive testimony (*e.g.,* the appellee says that the appellant testified in May 2000 that he earned $102,350.00 in 1999, but his tax returns, produced in August 2000, showed gross income of $305,748.00; he testified that his business earned $125,000.00, but his business tax return showed $287,532.00 was earned); and that the appellant unreasonably attempted to deny the legal validity of an agreed order with which the parties had complied and relied upon for eight years.

We are not prepared, on the record before us, to directly reverse the circuit court and require the appellant to pay the appellee's fees and costs. However, our resolution of the arguments made by the parties in the instant case weighs in favor of an award of fees and costs to the appellee, and we conclude that the circuit court should reconsider the issue in light of all of the facts and factors before the court.

### III.

In conclusion: (1) we affirm the circuit court's ruling upholding the 1991 order's requirement that appellant will pay lifetime spousal support to the appellee; (2) we reverse the circuit court's ruling requiring the appellant to set up and fund a trust fund from which spousal support is to be paid; (3) we direct the circuit court to calculate and order the payment of support arrearage and interest thereon; (4) we direct the circuit court to reconsider the issue of attorney fees and costs; and (5) we remand the issue of the appellee's request for an increase in monthly support.

Affirmed, in part, Reversed, in part, and Remanded.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

---

1. *Savage* was explained in *Banker,* 196 W.Va. at 543, 474 S.E.2d at 473, as follows,

> For more than thirty years, this Court has held that a party in a divorce proceeding could not

MAYNARD, Justice dissenting.

(Filed July 3, 2003)

In her brief submitted to this Court on December 13, 2002, Ms. Braley admits that she and Mr. Hunt were divorced on May 12, 1989 and that "[t]he final order was silent on the issue of alimony." She also admits that "there was no record that a property settlement agreement was ever filed with the court." The plain and simple rule of law which was in effect at the time the parties divorced states, "Where a final divorce decree made no award of alimony, the divorce decree cannot be subsequently modified to grant alimony." Syllabus, *Savage v. Savage,* 157 W.Va. 537, 203 S.E.2d 151 (1974), *overruled by Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). In other words, neither party in this case was granted alimony in the original divorce decree; therefore, the family law master and the circuit court were without jurisdiction to later reconsider and award alimony to either party. Under this set of facts, that should be the end of the story. However, the majority determined that the law as it existed at that time does not apply. Consequently, that is not the end of the story.

It was not until 1996, seven years after these parties divorced, that this Court revisited the issue of alimony and said,

> Under W.Va.Code, 48–2–15(e) (1993), a circuit court has jurisdiction to hear and rule upon a motion seeking modification of a decree to include alimony, as the ends of justice may so require, even though the decree previously denied alimony or did not address the issue of alimony. To the extent that *Savage v. Savage,* 157 W.Va. 537, 203 S.E.2d 151 (1974), and its progeny are inconsistent, they are expressly overruled.

Syllabus Point 2, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). *Banker* also explicitly states that the new rule "is not to be applied retroactively." [1] *Id.,* 196 W.Va.

> reopen the issue of alimony except where the final order did in fact provide for at least a nominal alimony award. A one dollar award was deemed a sufficient nominal amount to

at 548, 474 S.E.2d at 478. Since the circuit court obviously lacked jurisdiction to reopen the issue of alimony for the benefit of either party, the majority avoids its own law and affirms the circuit court's award of alimony to Ms. Braley by stating that "nothing in *Savage* or *Banker* operated to prohibit a party from *voluntarily* assuming the legally enforceable obligation of paying spousal support, by agreeing to modify a prior divorce decree that was silent as to spousal support."

The uncontroverted fact is that Mr. Hunt did not enter into and sign an agreement with Ms. Braley. The circuit court found that Ms. Braley submitted a petition and order in 1991 purportedly signed by both parties seeking a modification of alimony. Unlike the majority, I do not believe that a petition and order equal an agreement. But even if they do, the circuit court concluded in its order that Roger Hunt did not sign the petition or the order; *his signatures were forged.* The court nonetheless determined that since Mr. Hunt abided by the "apparent[ ] agreement," he was later estopped from denying that an agreement existed. In her response filed on appeal, Ms. Braley admits that "[t]he purported signatures of the petitioner on the petition . . . and on the agreed order. . . *are not in the petitioner's handwriting.*" The fact is that no document exists that was signed by Mr. Hunt pursuant to which he agreed to pay alimony to Ms. Braley for life. I am appalled that any court in this State would make a life award to anyone based upon this set of facts.

A short, fair review of the facts in this case shows:

●No alimony was ordered when the final divorce order was entered.

●No property settlement agreement was ever signed by Mr. Hunt or filed with the court. Even the copy of the property settlement agreement which was supposedly signed by both Ms. Braley and Mr. Hunt in 1989, but admittedly was never filed, contains no provision for alimony.

●The signatures of Mr. Hunt that appear on the petition and court order are forged.

●There is no document signed by Mr. Hunt wherein he agreed to pay alimony. None!

In spite of these uncontroverted facts, and in spite of the further fact that someone perpetrated a deliberate fraud on the trial court by submitting admittedly forged documents, this Court rewards that fraud by awarding alimony in the amount of $24,000 a year, for life! Furthermore, this Court ruled that Ms. Braley "may re-present [her request to modify and increase spousal support] to the lower court upon remand." She may get more.

To add insult to injury, this huge award is made without the majority uttering one word about the fraud on the court or about the forged court documents. Who forged these documents? Shouldn't there at least be some inquiry? Apparently it is now permissible to forge court orders with impunity. The last time I looked, forgery in this amount was a serious felony. I wonder how many people are serving time in our penitentiary today for forgery wherein the amount involved was much less than $24,000 a year. Try forging a check for $24,000 and see if the courts wink at that. Yet, this Court winks at a forged court order!

In sum, the facts do not support an award of alimony is this case, and, as outlined above, the law in existence when this divorce was granted prohibits alimony when not granted in the original decree. Nonetheless, based upon forged documents and the fact that Mr. Hunt gratuitously paid Ms. Braley $2,000 per month until May 1999, he must continue to pay at least that much as long as she lives.

Accordingly, I respectfully dissent from the majority opinion because, under the facts and law presented here, I find no basis upon which to award alimony. I am authorized to

continue the circuit court's jurisdiction to reopen the issue at a later time. Thus, in the absence of the nominal award of alimony, either a separate suit or a motion to reopen was barred by the doctrine of *res judicata* or lack of jurisdiction, respectively, after a final divorce was granted.

state that Justice Davis joins me in this dissent.