# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Matthew H.,
**Respondent Below, Petitioner**

vs)   No. 15-1074 (Harrison County 14-D-35)

Heather H.,
**Petitioner Below, Respondent**

**FILED**

**October 28, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Matthew H.,[1] pro se, appeals the October 1, 2015, order of the Circuit Court of Harrison County affirming the March 26, 2015, decree of divorce entered by the Family Court of Harrison County. In the March 26, 2015, decree of divorce, the family court granted Respondent Heather H. a divorce on the grounds of adultery and cruel and inhuman treatment. The family court also made rulings with regard to parenting time and equitable distribution, and ordered that each party was responsible for his or her own attorney's fees. Respondent, by counsel Delby B. Pool, filed a response and cross-appeal, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision.

For the reasons expressed below, we affirm, in part, and reverse, in part, the decision of the family court, and remand this case to the family court with directions to (1) apportion the previously undesignated payments in the total amount of $12,000 between equitable distribution and child support and to recalculate each party's share of the marital estate, if necessary; and (2) reevaluate whether respondent is entitled to be awarded her attorney's fees with specific findings

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

regarding the factors listed in syllabus point four of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

The parties married on July 12, 2003, in Harrison County, West Virginia. During the marriage, the parties produced three children: M.H. (born September 6, 2006), E.H. (born October 23, 2008), and G.H. (born June 1, 2011). The parties separated on October 3, 2013. While the parties dispute whether petitioner's relationship with a coworker became sexual before or after the date of their separation, petitioner admits to a sexual relationship with his coworker prior to the filing of respondent's petition for divorce on January 16, 2014. In her petition, respondent sought a divorce on grounds of (1) adultery; and (2) cruel and inhuman treatment.

By an order *pendent lite* entered April 7, 2014, the family court made rulings with regard to temporary child custody and visitation, and temporary support payments. First, the family court ruled that the children would reside with respondent and that petitioner shall have visitation from Friday at 6:00 p.m. to Sunday at 6:00 p.m. each weekend except for the weekend which includes the third Friday of the month. The family court ordered that, if petitioner "is not present to pick up the children by 6:20 p.m.[,] . . . his pick[-]up time shall be Saturday morning at 10:00 a.m." Regarding temporary support payments, the family court ordered that beginning on March 1, 2014, petitioner shall pay respondent $3,000 per month and that "$1[,]800 shall be considered child support, and $1[,]200 shall be undesignated until the final hearing."

On June 23, 2014, respondent filed a motion to compel certain discovery responses from petitioner. Following a July 7, 2014, hearing, the family court ruled on the parties' discovery disputes. By order entered July 18, 2014 order, the family court noted that respondent also requested to be awarded her attorney's fees, but deferred ruling on that request until after "the trial on the merits."[2]

In July of 2014, the parties reached an agreement in their case during court-ordered mediation. However, petitioner subsequently filed a motion for leave to repudiate that agreement. By order entered October 7, 2014, the family court allowed petitioner to repudiate the parties' agreement, but also found that the parties "were in agreement" that the April 7, 2014, order *pendent lite* should be modified to include the holiday schedule produced by the parties during the mediation. Accordingly, the family court modified the order *pendent lite* to include the holiday schedule to govern any holidays occurring before the final divorce hearing.

A final divorce hearing was held on December 1, 2014. At that hearing, the parties, respondent's parents, and various other witnesses testified. At the conclusion of the hearing, the family court made certain findings on the record.[3] First, the family court found that the evidence

---

[2]Respondent then filed a motion for attorney's fees on August 26, 2014.

[3]The family court made several findings and rulings following the final divorce hearing. Only those rulings which are the basis of either petitioner's appeal or respondent's cross-appeal are referenced herein.

(continued . . .)

supported granting respondent a divorce on both of her asserted grounds. The family court determined (1) that petitioner committed adultery; and (2) that, by both alternatively lying and telling the truth about his affair with his coworker, petitioner engaged in cruel and inhuman conduct that rose "to the level of destroying [respondent]'s mental well-being." The family court found that petitioner's conduct made cohabiting with him "unendurable" and supported "[respondent's] withdrawal from the marriage." With regard to parenting time, the family court ruled that the parties would continue to divide holidays with the children pursuant to the schedule produced by them during the previous mediation.

Next, the family court made rulings regarding the equitable distribution of the marital estate. The family court awarded a Nissan automobile to respondent, and directed her to sell that vehicle and apply the proceeds of the sale to make repairs to the basement of the marital home. The family court stated that it expected to freeze petitioner's equity in the marital home as of the date of the final hearing. The family court found that, if it froze petitioner's equity in the home, any windfall from a raise in property value would go to respondent and found that such a result would be equitable because respondent is "making the future payments and bearing the property taxes, insurance, etc. for the home." Finally, the family court deferred making any rulings on other issues including respondent's request for attorney's fees.[4] The family court noted that "all objections of either party" were preserved.

The family court subsequently entered its decree of divorce on March 26, 2015, in which the court incorporated its oral rulings from the December 1, 2014, final hearing as well as additional rulings the court communicated to the parties in separate letters dated December 11, 2014, and February 18, 2015. The family court granted respondent a divorce based upon adultery and cruelty on the part of petitioner.

With regard to parenting time, the family court found that respondent performed at least 80% of the pre-separation child rearing functions and designated her as the primary custodial parent. The family court awarded petitioner parenting time on the following schedule: (a) alternate weekends from 6:00 p.m. Friday to 6:00 p.m. Sunday; (b) Thursday evenings from 6:00 p.m. to 9:00 p.m.; and (2) two ten-day periods during the summer for vacations. The family court also gave respondent one full week of uninterrupted vacation time and confirmed that parenting time on holidays shall be on the schedule produced by the parties during court-ordered mediation, including provisions that the children attend church on Christmas Eve and on Easter morning with respondent. The family court kept the provision from the April 7, 2014, order *pendent lite* that, if petitioner fails to pick up the children by 6:20 p.m. at the start of his parenting time, he will pick them up at 10:00 a.m. on Saturday morning. The family court noted that this provision would apply, "unless otherwise agreed" between the parties.[5]

---

[4]The transcript of the December 1, 2014, final divorce hearing reflects that respondent raised the issue of attorney's fees after the family court did not rule on that issue.

[5]The family court further ruled that neither party would disparage the other in front of the (continued . . .)

With regard to the equitable distribution of marital property, the family court confirmed that "[petitioner]'s equity in the last marital home is frozen as of the date of separation" and that, if the house is sold for more than the stipulated value of $350,000, "any windfall goes to [respondent]." The family court ruled that the marital home had to be listed for sale by December 31, 2016. Based on an attached worksheet of the parties' debts and asserts, the family court awarded respondent $120,013 from the marital estate and awarded petitioner $110,219. The family court found that the distribution of the marital estate was "equitable" despite the fact that the division of assets and debts was "not exactly even[.]" The family court further found that the previously undesignated payments made by petitioner to respondent in the amount of $1,200 per month pursuant to the April 7, 2014, order *pendent lite* were both "equitable distribution and child support."[6] Finally, the family court ruled that each party was responsible for his or her own attorney's fees.

On April 27, 2014, petitioner filed a motion for the family court to reconsider the March 26, 2015, decree of divorce. The family court denied the motion by order entered May 27, 2015. With regard to parenting time, the family court found that, to the extent that petitioner had more time with the parties' children during the pendency of the case, "[t]emporary rulings are not the starting point, or minimum expectations, for either party, and neither party should expect his/her relief after [the final hearing] to be automatically enhanced." Following the family court's denial of his motion for reconsideration, petitioner appealed to the circuit court. Respondent filed a cross appeal regarding the denial of her attorney's fees. By order entered August 28, 2015, the circuit court remanded the case to the family court with directions to file its December 11, 2014, and February 18, 2015, letter rulings. The family court filed its letter rulings on August 31, 2015.

After the entry of the family court's letter rulings, the circuit court affirmed the March 26, 2015, decree of divorce. With regard to the grounds for divorce, the circuit court found that the family court did not err in finding that petitioner engaged in an adulterous relationship prior to the filing of respondent's petition for divorce and that relationship "led to the breakdown of the parties' marriage." The circuit court further found that the family court did not clearly err in

---

children, nor allow others to do so, and that the parties would not discuss court-related or financial matters in front of the children. On appeal, petitioner objects to these restrictions as a violation of his freedom of speech. Respondent counters that such restrictions are customarily imposed in family court cases involving minor children. We agree with respondent and find that petitioner's objections are without merit. *See* Syl. Pt. 3, *In Re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[a]lthough parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children"); *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (stating that "the best interests of the child is the polar star by which decisions must be made which affect children.").

[6]The previously undesignated payments of $1,200 per month totaled $12,000 because those payments were made by petitioner to respondent from March 1, 2014, through the final divorce hearing on December 1, 2014.

4

determining that petitioner engaged in cruel and inhuman conduct towards respondent. The circuit court rejected petitioner's argument that he was not provided with respondent's mental health records because petitioner "filed a motion to compel her medical records, and an [o]rder that granted [the] same was entered." The circuit court further rejected, as a ground for reversal, the family court's refusal to admit the complete transcript of respondent's November 6 and 7, 2014, deposition. The circuit court found that the family court erred in failing to admit the complete deposition transcript under Rule 32(a)(2) of the West Virginia Rules of Civil Procedure, but that the error was harmless because the substantially same material "was addressed in some fashion at the final . . . hearing."

With regard to parenting time, the circuit court found that the family court did not clearly err in finding that respondent performed at least 80% of the pre-separation child-rearing functions. In so ruling, the circuit court rejected petitioner's argument that the testimony of respondent's father was contrary to the family court's finding. The circuit court further upheld the family court's equitable distribution of marital property. Finally, the circuit court affirmed the family court's refusal to award respondent her attorney's fees and denied a motion filed by respondent to be awarded her attorney's fees on appeal. The circuit court found that respondent was not entitled to attorney's fees because petitioner "raised issues on appeal that necessitated this [c]ourt's briefly remanding the case to the [f]amily [c]ourt for clarification of its rulings."

On November 2, 2015, petitioner appealed the circuit court's October 1, 2015, order affirming the family court's March 26, 2015, decree of divorce. Respondent subsequently filed a response and cross-appeal on April 8, 2016. On May 9, 2016, petitioner filed a reply brief.

We review family court orders affirmed by a circuit court pursuant to the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). We will first address petitioner's procedural challenges. We will then address petitioner's challenges to the grounds on which the family court granted respondent a divorce and to the family court's allocation of parenting time. Finally, we will address petitioner's challenge to the family court's distribution of the marital estate as inequitable, together with respondent's cross-appeal of error regarding the denial of her request for attorney's fees.

Petitioner's procedural challenges

First, petitioner contends that respondent's attorney, who prepared the March 26, 2015, decree of divorce, included rulings that the family court did not make. "As an appellate court, we concern ourselves not with who prepared the findings for the [family] court, but with whether the

findings adopted by the [family] court accurately reflect the existing law and the trial record." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996). Upon our review of the March 26, 2015, decree of divorce, we find that handwritten notations on the decree, initialed by the family court, established that the court read the decree prior to its entry. The family court's notations reflect that the court added language, excised language, and made corrections. Therefore, we reject any argument by petitioner that the decree of divorce included provisions of which the family court was not aware.

In his next procedural challenge, petitioner contends that the family court erred in allowing respondent to testify regarding how petitioner's conduct affected her mental well-being. The circuit court found no error because petitioner had requested respondent's mental health records and the family court granted that discovery request. However, petitioner asserts that, following the entry of the family court's order compelling production, respondent failed to produce all of the records. "[R]ulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). At the final divorce hearing, the family court instructed respondent not to testify about what her doctor did or did not do. The family court further stated that it would disregard any testimony regarding a mental health diagnosis. The family court allowed respondent to testify only as to her layperson's perceptions of how petitioner's conduct affected her mental well-being. Therefore, given the limitations imposed by the family court, we conclude that the family court did not abuse its discretion in considering respondent's testimony as to how her mental well-being was affected.

In his last procedural challenge, petitioner contends that the circuit court incorrectly determined that the family court's failure to admit the complete transcript of respondent's deposition under Rule 32(a)(2) was harmless error. Respondent counters that the family court's ruling was that the court would not read the entire transcript, but that petitioner could direct the court's attention to portions of the deposition transcript that he wanted the court to consider. Given that respondent testified at the final divorce hearing and was cross-examined by petitioner—who had the family court's permission to use portions of the deposition transcript he believed to be pertinent—we agree with the circuit court that any error on the family court's part in refusing to admit the complete transcript of respondent's deposition was harmless. *See* Rule 61, W.V.R.C.P. (providing that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

### Petitioner's challenges to the grounds for divorce and the family court's allocation of parenting time

Having resolved petitioner's procedural challenges, we now address and affirm the family court's rulings with regard to the grounds on which respondent was entitled to a divorce and to the family court's allocation of parenting time. We find that the only legal issue raised by petitioner regarding those rulings is his contention that, under West Virginia law, an extramarital affair does not constitute adultery if the adultery occurs after the date of separation. Respondent counters that the relevant date is the date on which the divorce petition was filed. We agree with respondent. We find that West Virginia Code § 48-5-301 clearly permits the granting of a divorce on the ground of

adultery if the adultery occurs within "three years before the institution of the action." *See* Syl. Pt. 3, in part, *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 497 S.E.2d 531 (1997) (holding that statutory defenses to granting divorce on ground of adultery include ". . . (3) [that] the last adulterous act occurred *[more than] three years before the complaint for divorce was filed*")[7] (emphasis added). In the instant case, petitioner admits to a sexual relationship with his coworker between the parties' October 3, 2013, separation and the January 16, 2014, filing of respondent's divorce petition. Therefore, we conclude that the family court did not abuse its discretion in granting respondent a divorce on the ground of adultery.

Similarly, the family court did not abuse its discretion in also granting respondent a divorce on the ground of cruelty. West Virginia Code § 48-5-203(a)(3) provides, in pertinent part, that a divorce may be granted on the ground of cruel and inhuman conduct when the conduct at issue "destroys or tends to destroy the mental or physical well-being, happiness and welfare of the other and render continued cohabitation unsafe or unendurable." The family court found that, by both alternatively lying and telling the truth about his affair with his coworker, petitioner engaged in behavior that rose "to the level of destroying [respondent]'s mental well-being." The family court further found that petitioner's behavior made cohabiting with him "unendurable." Based on our review of the record, we find no reason to disturb these findings. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (stating that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact").

With regard to the allocation of parenting time, petitioner generally complains that he has less parenting time with the parties' children than he had under the temporary visitation established by the April 7, 2014, order *pendent lite*. Based on our review of that order, we find the family court reduced petitioner's parenting time with the parties' children by one weekend per month in the March 26, 2015, decree of divorce.[8] However, we further find that there is no reason to disturb the family court's finding that respondent performed at least 80% of the pre-separation child rearing functions.[9]

---

[7]At the time of our decision in *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 497 S.E.2d 531 (1997), the relevant statutory provision was found at West Virginia Code § 48-2-14. The Legislature moved the provision to its current location at West Virginia Code § 48-5-301 during the 2001 recodification of the chapter of the West Virginia Code relating to domestic relations. *See* 2001 W.Va. Acts ch. 91.

[8]We note that, unlike the April 7, 2014, order *pendent lite*, the March 26, 2015, decree of divorce allocates parenting time to petitioner on Thursday evenings.

[9]Petitioner relies on the testimony of respondent's father to establish that respondent performed less than 80% of the pre-separation child rearing functions. However, upon our review of that testimony, we determine that it was within the family court's discretion to find that respondent's father meant that he took care of the parties' children while *both* parties were at work. As the family court was the trier of fact, we defer to its determinations of the context in which a
(continued . . .)

We note that West Virginia Code § 48-9-206(a) requires the family court to allocate custodial responsibility so that the proportion of custodial time the children spend with each parent "approximates the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation." While West Virginia Code § 48-9-206(a) provides for certain exceptions, we find that the family court did not err in finding that "[t]emporary rulings are not the starting point, or minimum expectations, for either party, and neither party should expect his/her relief after [the final hearing] to be automatically enhanced." *See* W.Va. Code § 48-9-206(b) (providing that, "[i]n determining the proportion of caretaking functions each parent previously performed for the child under subsection (a) . . ., the court shall not consider the divisions of functions arising from temporary arrangements after separation[.]"). Therefore, we conclude that the family court did not abuse its discretion in the allocation of the parties' parenting time in the March 26, 2015, decree of divorce.

Petitioner also makes two specific objections to the family court's allocation of parenting time, which we find merit discussion. First, petitioner objects to provisions in the holiday schedule that the children attend church on Christmas Eve and on Easter morning with respondent. We find that respondent having parenting time with the children to take them to Christmas Eve and Easter services was consistent with respondent's testimony that she was heavily involved in her church and had involved the children in church activities for "their entire [lives]."[10] We further find that petitioner previously agreed that respondent would have parenting time with the children to take them to church. By order entered October 7, 2014, the family court modified the April 7, 2014, order *pendent lite,* to include the holiday schedule in that order pursuant to the parties' agreement that it do so. Therefore, we conclude that the family court did not abuse its discretion in carrying over the provisions that respondent will have parenting time with the children to take them to church services into the March 26, 2015, decree of divorce given that those provisions (1) are supported by respondent's testimony; and (2) were previously agreed to by petitioner.

Second, petitioner objects to the family court's decision to also carryover the provision that, if petitioner fails to pick up the children by 6:20 p.m. at the start of his weekend visitation, he will pick them up at 10:00 a.m. on Saturday morning. We find that, in the decree of divorce, the family court noted that this provision would apply "unless otherwise agreed" between the parties. Based on our review of the record, we find that the provision to which petitioner objects is reasonable and conclude that the family court did not abuse its discretion including it in the decree of divorce.

<u>Petitioner's challenge to equitable distribution and
respondent's cross-appeal regarding attorney's fees</u>

---

witness's testimony should be taken. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995).

[10]Respondent also testified that petitioner had been not allowing the children to participate in as many church activities.

We affirm, in part, and reverse, in part, the decision of the family court with regard to the equitable distribution of the marital estate and attorney's fees based on the adequacy of findings regarding each issue. "Findings of facts are adequate only if they are sufficient to indicate the factual basis for the ultimate conclusion. If an order lacks adequate detail, the case will be remanded for additional specificity." *Burnside v. Burnside*, 194 W.Va. 263, 275, 460 S.E.2d 264, 276 (1995); *see also Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996). (stating that where lower tribunals make "only general, conclusory or inexact findings," case will be remanded for further findings and development)

In his challenge to the equitable distribution, petitioner contends the family court erred in (1) awarding respondent a windfall from the sale of the marital home above its stipulated value of $350,000 (at which the court froze his equity in the house); and (2) failing to include the previously undesignated payments in the total amount of $12,000 in its calculations of each party's share of the marital estate. We affirm the family court's decision with regard to the freezing of petitioner's equity in the marital home at $350,000. We find that the family court adequately explained that it was equitable that respondent receive any profit from the sale above $350,000 because respondent is "making the future payments and bearing the property taxes, insurance, etc. for the home," which included making repairs to the basement as ordered by the court.

However, we reverse the family court's finding that the $12,000 was "equitable distribution and child support" because such finding is inexact. We find that the $12,000 cannot be both equitable distribution and child support because there are different consequences depending on the type of payment it was. For example, if the $12,000 constituted part of the equitable distribution, we find it should have been included on the worksheet used by the family court to calculate each party's share of the marital estate. It was not. Therefore, we remand the case to the family court with directions to apportion the previously undesignated payments in the total amount of $12,000 between equitable distribution and child support. If the family court deems all or part of the $12,000 as equitable distribution, it is to include that amount in a recalculation of each party's share of the marital estate with specific findings pursuant to West Virginia Code § 48-7-103 which provides that the court may alter an equal division of marital property if it considers factors set forth therein.

We similarly reverse the family court's denial of respondent's motion for her attorney's fees and remand the matter to that court with directions to make specific findings as to the factors listed in syllabus point four of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).[11] In syllabus point four of *Banker*, we held, in pertinent part, as follows:

---

[11]Petitioner contends that respondent failed to preserve the issue of her attorney's fees for appeal. However, petitioner acknowledges that, at the conclusion of the final divorce hearing, respondent raised the issue after the family court did not rule on her motion for attorney's fees. The family court again deferred ruling on the motion. The family court subsequently directed each party to pay his or her own attorney's fees in the March 26, 2015, decree of divorce in a ruling which respondent appealed to the circuit court. Therefore, we conclude that respondent preserved the issue of her attorney's fees for appeal.

(continued . . .)

9

. . . In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

*Id.* at 538, 474 S.E.2d at 468. We find that neither the family court nor the circuit court, in affirming the family court's decision and denying respondent's motion for attorney's fees filed in that court, addressed the *Banker* factors. We direct the family court to reevaluate whether respondent is entitled to be awarded her attorney's fees both in that court and in the circuit court.[12] *See Quicken Loans, Inc. v. Brown*, 236 W.Va. 12, 26-27, 777 S.E.2d 581, 595-96 (2014) (stating that lower court has authority to award attorney's fees for appellate proceeding if directed to do so).

In summary, and for the foregoing reasons, we reverse the circuit court's October 1, 2015, order affirming the family court's March 26, 2015, decree of divorce. With regard to the March 26, 2015, decree of divorce, we affirm the family court's decision with regard to the grounds upon which it granted respondent a divorce, the allocation of parenting time between the parties, and the freezing of petitioner's equity in the marital home at its stipulated value of $350,000. We reverse the family court's decision and remand the case to the family court with regard to the $12,000 in previously undesignated payments and respondent's request for her attorney's fees. On remand, we direct the family court to (1) apportion the $12,000 between equitable distribution and child support and to recalculate each party's share of the marital estate, if necessary; and (2) reevaluate whether respondent is entitled to be awarded her attorney's fees with specific findings regarding the factors listed in syllabus point four of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Affirmed, in part, Reversed, in part, and Remanded with Directions.

**ISSUED**: October 28, 2016

---

[12]Respondent also seeks to be awarded her attorney's fees in this Court. It is unclear whether respondent requests to be awarded her fees only with regard to her cross-appeal, or also for having to respond to petitioner's assignments of error. We note that we do not rule on the merits of either issue on which we are remanding the case. Rather, we only direct the family court to reevaluate those issues and make more detailed findings with regard to each. Therefore, we decline to award respondent her attorney's fees incurred in this Court.

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II