# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re Guardianship of N.P. and B.P.**

**No. 19-1187** (Cabell County 11-FIG-58)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.P., by counsel Kimberly E. McGann, appeals the Circuit Court of Cabell County's December 9, 2019, order affirming the Family Court of Cabell County's denial of his motion to revoke or modify a prior award of legal guardianship of his children, N.P. and B.P., to respondent.[1] Respondent D.W., the children's maternal grandmother and legal guardian, by counsel Steven M. Bragg, filed a response in support of the circuit court's order. The children's guardian ad litem, Arik C. Paraschos, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in affirming the family court's finding that there was no change in circumstances warranting a modification or revocation of respondent's legal guardianship of the children, in affirming the family court's order where it contained findings that petitioner was guilty of abuse and/or neglect but the matter was not transferred to the circuit court, and in affirming the family court's award of attorney's fees for respondent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2010, the children at issue began residing in respondent's home, and she was eventually granted legal guardianship of the children, upon the parents' consent, in June of 2011.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Since that time, respondent's guardianship over the children has continued, uninterrupted.[2] It is important to note, given the lower courts' focus on child B.P., that he has remained in respondent's care since he was approximately eight months old and that respondent "has been his psychological parent since before the child was one year old."

Since respondent was granted legal guardianship of the children, petitioner has filed several petitions to revoke or modify the guardianship upon assertions that he no longer consented and that circumstances had changed such that revocation or modification was appropriate. After one such petition in March of 2012, the family court granted petitioner visitation on certain weekends and holidays. The children's guardian ad litem on appeal in this matter was appointed to this role during the 2012 proceedings and has served in that capacity when necessary in response to petitioner's various petitions for modification and/or termination of the children's legal guardianship. In January of 2013, petitioner again filed such a petition, and the family court reduced petitioner's visitation to day visits. During proceedings in regard to the petition in 2013, petitioner, who at the time was self-represented, voluntarily left the courtroom during a hearing. Following this incident, the family court reduced petitioner's visitation to four hours per week and required that it be supervised. Between 2015 and 2017, petitioner filed three more petitions to modify or terminate the guardianship, all three of which were denied.

On April 8, 2019, petitioner filed the petition to terminate or modify the guardianship that initiated the matter on appeal. According to petitioner, he and his wife had a child who is not at issue on appeal and during supervised visits with the children at issue, they developed a bond with his youngest child. The family court reappointed the children's guardian ad litem to investigate whether petitioner's circumstances had changed such that modification or termination of the guardianship was warranted.

Prior to the final hearing, the guardian ad litem filed a report on August 16, 2019, concluding that, absent extraordinary circumstances, he saw "no way that this guardianship could be reversed and be in the best interests" of B.P. The guardian did not make a recommendation as to whether petitioner's visitation should continue to be supervised or if it was "worth one last try

---

[2]While respondent still exercises legal guardianship over both children, the record shows that at the time of the family court's hearing on the petition below, child N.P. was in the legal and physical custody of the State of West Virginia. It is unclear from the record when, exactly, N.P. was placed in the State's custody, but it appears that this was a result of a juvenile petition arising out of N.P.'s violent conduct, including an incident in which N.P. seriously injured a classmate. According to the record, N.P. suffers from oppositional defiant disorder. The family court found that respondent "did all she could to protect herself and [B.P.], and to provide a home for [N.P.]," but that "the situation became intolerable." According to the family court's order, respondent "continues to cooperate with the State of West Virginia to deal with [N.P.]'s profound" condition. Given the fact that N.P. was in the State's custody at the time the family court's order was entered, the family court was clear that, practically, the "primary focus" was B.P. The family court stressed, however, that its "ruling shall address [N.P.] as well, if and when he is discharged from State custody."

in this case to craft a visitation plan that does not involve paid supervisors." However, the guardian did provide several recommendations for either scenario, including that the parties have no direct contact because of their strained relationship. During the guardian's interview of B.P., the child indicated that respondent "was his favorite person" and "the person he most enjoyed spending time with." Although the child expressed that he liked to see his father and would like an opportunity to visit with his half-brother, B.P. specifically indicated that he preferred when visits with petitioner were supervised because he was fearful that he would have an asthma attack and believed someone from Children First, the organization that provides supervision, would know how to respond appropriately.

Following the final hearing on August 22, 2019, the family court entered its order denying petitioner's request for revocation or modification of respondent's guardianship. The family court specifically found that respondent "has done everything she could to raise her grandchildren to the best of her ability" and that she "worked with the [c]ourt to provide visitation opportunities for" petitioner. The family court noted, however, that facilitating visitation had not been easy, as the parties have a long and contentious relationship, and that respondent "has not been the instigator of problems in this case." As a result of the tensions between the parties, respondent attempted high conflict counseling with petitioner, but it was unsuccessful. According to the family court, petitioner was hostile to respondent and showed indifference to basic communication regarding the children's needs. Further, petitioner was supposed to provide respondent with money for gas to transport the children to petitioner's supervised visitations, but the family court found that petitioner did not fulfill this responsibility. The family court also outlined issues with B.P.'s health, including asthma and several allergies that "have developed into serious issues [a]ffecting the child's health from time to time." In response to these issues, respondent maintained her home in such a manner as to shield the children from these problems. Petitioner, however, did not recognize the seriousness of the issues, having refused to administer maintenance medication during visits based upon his own internet research and without speaking to the children's prescribing physicians; bringing a cat into his home, despite knowing that B.P. has asthma and dander allergies; and bringing an orange drink for B.P., despite knowing that the child suffers a citrus allergy. The family court further found that petitioner's visits had, for some time, been restricted to Children First. According to the family court, petitioner's defiance of recommendations, directives, and orders "was troubling and a potential safety risk." Further, petitioner's conduct resulted in a "complete breakdown of the relationship between [petitioner] and Children[] First," at which point his visitation with that agency was suspended for a time. This suspension, according to the family court, appeared to have led to petitioner's filing of the most recent petition to revoke or modify respondent's legal guardianship.

The family court found that the only change in circumstances was that petitioner and his wife were expecting their second child and that petitioner maintained employment. The family court further found that it was not in the children's best interest to revoke or modify the guardianship. According to the family court, barring extraordinary circumstances, respondent should remain B.P.'s legal guardian, given her role as a psychological parent. The family court further found that petitioner's repeated petitions to terminate respondent's guardianship wasted his resources and those of respondent, "resources that are sorely needed in both parties' households." The family court refused petitioner's request to revoke or modify the guardianship

and ordered that visitation would continue to be supervised by Children First. The court further ruled that if N.P. was returned to respondent's physical custody, his visitation with petitioner was to comply with the recommendations outlined by the DHHR employee overseeing the child's case. The court further ordered petitioner to pay respondent's attorney's fees in the amount of $1,500.

Petitioner appealed the order denying his petition to the circuit court, which affirmed the family court's ruling by order entered on December 9, 2019. In affirming the lower court, the circuit court found that petitioner should not be discouraged from bringing petitions to modify his visitation schedule, but that "the changes in circumstances identified are insufficient as they all boil down to arguing a passage of time." According to the circuit court, petitioner's appropriate visitations with B.P., his fulfillment of child support payments, and paying the costs incurred for visitation are expected, not changes in circumstances that would warrant revocation or modification of the guardianship. The circuit court found no merit to petitioner's assertion that the guardianship should be revoked because he no longer consented to it, given that consent is relevant to whether a guardianship may be granted, not whether a guardianship should be revoked or terminated. Instead, the circuit court cited West Virginia Code § 44-10-3(j), which sets forth as follows:

> For a petition to revoke or terminate a guardianship filed by a parent, the burden of proof is on the moving party to show by a preponderance of the evidence that there has been a material change of circumstances and that a revocation or termination is in the child's best interest.

The circuit court found that the family court did not abuse its discretion because petitioner failed to show that there had been a material change of circumstances and that revoking the guardianship was in the children's best interest. Further, petitioner alleged in the circuit court, as he does on appeal to this Court, that it was inappropriate for the family court to rule on the petition because it was required to refer the matter to the circuit court when it found that he medically neglected the children. The circuit court found "no evidence that the [f]amily [c]ourt found [petitioner] guilty of medical neglect" and that the family court simply "discussed the child's medical issues, times when [petitioner] has failed to take those concerns seriously, and that the supervised visitations are the best solution . . . [for] ensuring that the child remains healthy." The circuit court also upheld the family court's award of attorney's fees for respondent under West Virginia Code §§ 48-1-305(b) and (c). It is from the circuit court's order affirming the family court's denial of the petition to revoke or modify respondent's guardianship that petitioner appeals.

We have previously set forth the following:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner first asserts that it was error to deny his petition, especially in light of the fact that the family court's finding that the only change in circumstances was that petitioner and his wife were expecting their second child and that he maintained employment was erroneous. According to petitioner, there were multiple changes in circumstances beyond these two issues, including the fact that he participated in supervised visitation, parented another child, was current on child support, and had transportation and appropriate housing. While we recognize that petitioner is correct that the evidence concerned issues beyond the two issues cited in the family court's order, the record is nonetheless clear that petitioner is entitled to no relief in regard to this argument because the evidence to which he cites was clearly considered. In fact, the circuit court succinctly addressed this evidence when it found that petitioner's argument about his changed circumstances amounted to nothing more than the passage of time and that fulfilling his responsibilities, such as paying child support and acting appropriately during supervised visitation, was conduct that was expected of petitioner, not evidence of a change in circumstances. We agree with the circuit court's analysis.

As set forth above, in order to obtain a revocation or termination of a legal guardianship, a parent must prove that there has been a *material* change in circumstances and that the termination or revocation would be in the child's best interests. W. Va. Code § 44-10-3(j). On appeal, petitioner alleges only that his circumstances changed, yet fails to allege that the changes were material. We agree with the family and circuit courts in their assessment of the changes in circumstances at issue, which mostly evidence petitioner's compliance with responsibilities imposed through earlier family court orders. Even more importantly, however, is the fact that the record shows that revocation or modification of the guardianship at issue would not be in the children's best interests. Indeed, on appeal petitioner fails to allege that termination or modification would be in the children's best interests, highlighting his failure to carry his burden of proof below. As such, we find no error in the family court's denial of the petition.

We further note that, just as he did in the circuit court, petitioner argues that because he no longer consents to the guardianship, it was error for the family court to deny his petition. As the circuit court correctly noted in the order on appeal, petitioner has confused the standard for *granting* a guardianship with the standard for *revoking or terminating* a guardianship. Petitioner is correct that, under West Virginia Code § 44-10-3(f),

> The court may appoint a guardian for a minor if the court finds by clear and convincing evidence that the appointment is in the minor's best interest and:
> (1) The parents consent;
> (2) The parents' rights have been previously terminated;
> (3) The parents are unwilling or unable to exercise their parental rights;
> (4) The parents have abandoned their rights by a material failure to exercise them for a period of more than six months; or
> (5) There are extraordinary circumstances that would, in all reasonable likelihood, result in serious detriment to the child if the petition is denied.

What petitioner fails to recognize, however, is that this subsection has no bearing on whether his petition to revoke or modify the guardianship should be granted. Instead, the issue is governed by West Virginia Code § 44-10-3(j), as set forth above. Therefore, any argument petitioner predicates on West Virginia Code § 44-10-3(f) is of no moment.

We also find no merit to petitioner's argument that the family court erred in ruling on his petition because it was bound to refer the matter to the circuit court. On appeal, petitioner erroneously asserts that "any finding that restoring custody of the child to [petitioner] would result in serious detriment to the child . . . requires the [f]amily [c]ourt to transfer the matter to the [c]ircuit [c]ourt pursuant to Rule 13 of the West Virginia Rules of . . . Minor Guardianship Proceedings." According to petitioner, the family court abused its discretion in finding that he was guilty of medical neglect posing a safety risk to his children and by failing to transfer the case to the circuit court pursuant to this rule.[3] We find, however, that this argument is simply a misstatement of the record below.

As the circuit court observed, there is nothing in the record to suggest that the family court made a finding that petitioner abused or neglected the children. On the contrary, the family court simply discussed petitioner's repeated disregard of B.P.'s serious asthma and allergies, conditions which respondent has taken steps to mitigate. Nowhere in the order does the family court find petitioner guilty of medical neglect or otherwise indicate that petitioner's actions potentially rise to the level of abuse and/or neglect such that transfer of the case would have been required. Instead, the family court, in addressing whether revocation or modification of the guardianship was in the children's best interest, analyzed the care provided by respondent and contrasted it with petitioner's failure to take the issues seriously. We find that this did not require transfer of the case and, instead, was an appropriate consideration during the family court's analysis of the petition as required by West Virginia Code § 44-10-3(j). As such, petitioner is entitled to no relief in this regard.

Finally, petitioner argues that the family court erred in awarding respondent attorney's fees. We find, however, that petitioner is entitled to no relief because his argument is based entirely on inapplicable authority. As he argued in the circuit court, petitioner asserts on appeal to this Court that the family court erred because it did not undertake an analysis of any of the factors set forth in *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). Petitioner ignores, however, that we have refused to apply *Banker*, a case involving divorce, in the context of

---

[3] Rule 13 of the Rules of Minor Guardianship Proceedings provides, in relevant part, that

[i]f a family court learns that the basis, in whole or part, of a petition for minor guardianship brought pursuant to W. Va. Code § 44-10-3, is an allegation of child abuse and neglect as defined in W. Va. Code § 49-1-201, then the family court before whom the guardianship proceeding is pending shall remove the case to the circuit court for hearing. Should the family court learn of such allegations of child abuse and neglect during the hearing, then the family court shall continue the hearing, subject to an appropriate temporary guardianship order, and remove the case to the circuit court for hearing to be conducted within 10 days, for determination of all issues.

custodial matters. *E.O.R. v. M.D.W.*, No. 17-0355, 2018 WL 1218023 at *6 (W. Va. March 8, 2018)(memorandum decision) ("This case is a custody dispute, not a divorce action. Therefore, *Banker* is not controlling in this case."). Petitioner ignores the fact that West Virginia Code § 48-1-305(b) grants family courts discretion in awarding attorney's fees as follows: "The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action." Additionally, West Virginia Code § 48-1-305(c) provides that "[w]hen it appears to the court that a party has incurred attorney fees and costs unnecessarily . . . the court may order the offending party . . . to pay reasonable attorney fees and costs to the other party." This Court has routinely held that "the word 'may' is inherently permissive in nature and connotes discretion." *Daily Gazette Co. Inc. v. W. Va. Dev. Office*, 206 W. Va. 51, 64, 521 S.E.2d 543, 556 (1999) (citation omitted). Because petitioner's argument on appeal relies on *Banker*, which we find is not controlling, he cannot establish an abuse of discretion and is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 9, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: February 2, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton