IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT S.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-257**      (Fam. Ct. Berkeley Cnty. Case No. FC-02-2024-D-310)

**KATE L.,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Robert S.[1] ("Father") appeals the Family Court of Berkeley County's June 12, 2025, order directing him to pay $2,450 in attorney's fees, as well as other issues.[2] Respondent Kate L. ("Mother") did not participate in the appeal.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother were married on November 17, 2007, in Massachusetts. They share three children, born in 2009, 2011, and 2014. The parties' final divorce hearing was held before the Family Court of Berkeley County on July 16, 2024, with both parties appearing pro se. The family court entered its final order on July 18, 2024, which included the following findings of fact and conclusions of law:

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is self-represented.

[3] We recognize our limited and circumspect review of a family court order in an uncontested appeal, like this one, when the respondent fails to participate on appeal to support the order.

- The parties entered a "Separation and Property Settlement Agreement and Parenting Plan" ("Agreement") on April 29, 2024, which the court adopted and incorporated into the final divorce order.
- Mother was ordered to pay $1,166 in monthly child support to Father.
- As per the parties' Agreement, Mother was ordered to pay Father $42,000 in lump sum spousal support within sixty days of the entry of the order.
- Mother waived spousal support.
- The parties will have shared decision-making authority over the children.
- The parties will have a 50-50 parenting plan. Mother will have Mondays and Tuesdays, overnight. Father will have Wednesdays and Thursdays, overnight. The parties will alternate weekends from Friday evening until Monday morning. Holidays and summer break would also be shared equally.
- The parties' Agreement was in the children's best interest.
- The parties' Agreement was not obtained by fraud, duress, or other unconscionable conduct.
- The parties "agree that the [. . .] children shall continue to attend St. Joseph's Catholic School ("St. Joseph's") under 529 funds."
- The parties agree that "the children shall continue to attend St. James Catholic Church on Sundays and Catholic Holy Days of Obligation."

On December 20, 2024, Father filed a motion to enforce the divorce order's provision that the children continue to attend St. Joseph's, then a K-8 private school, alleging that the parties agreed that their oldest child would attend the school for high school when it opened the next school year.[4] Father alleged in his motion that he believed Mother intended to move to the Musselman High School district so the children could attend the public school and ride the bus home, and that she had failed to attend St. Joseph's high school open house, failed to comply with the parties' Agreement that the children would attend church regularly, and fostered the children's expectations about attending public school. Mother did not respond to Father's motion, and on January 14, 2025, Father filed a motion for default judgment.

On February 13, 2025, Mother filed a counter-petition for modification, alleging that a material change in circumstances had occurred in that St. Joseph's high school did not open as planned and the parties' oldest and middle children desired to attend public high school. Additionally, Mother stated that Father's home was destroyed by fire, which

---

[4] At the time of the final divorce hearing in July 2024, the parties' oldest child was a rising ninth grader. When school started in fall 2024, St. Joseph's high school was not open, and the oldest child attended Musselman High School, a public school, for the 2024-2025 school year. St. Joseph's high school was later scheduled to open for the 2025-2026 school year and Father was offered a teaching position there.

prevented him from exercising his fifty percent of their shared parenting time, and the children had primarily resided with Mother since the fire occurred. As such, Mother sought to be named the primary custodial parent, asked the court to allow the children to decide where they would attend school, and requested that the court recalculate child support based on the custodial allocation. On February 26, 2025, Mother filed a motion for $3,600 in attorney's fees due to Father's alleged "frivolous and unfounded legal filings."

On March 3, 2025, Father filed a response to Mother's motion for attorney's fees, arguing that Mother failed to specify which of his filings was frivolous. On March 10, 2025, the family court ordered the parties to attend mediation, which was unsuccessful. On March 12, 2025, Father filed a motion for clarification regarding the application of West Virginia Code § 48-9-209 to their custodial dispute, which the court interpreted as a request for legal advice, reiterated that Father should consider hiring competent legal counsel who could provide guidance and clarification on such issues of law, and took his motion under advisement, by order entered March 13, 2025.

On April 16, 2025, Father filed a memorandum he titled, "Submission Regarding Parental Fitness and Pattern of Conduct of [Mother]" (hereinafter "Submission"). In the Submission, Father alleged "serious contextual concerns regarding [Mother's] character, behavior, and ongoing influence on the parties' children[.]" Father attached text messages allegedly obtained from Mother's phone and what he characterized as a chronology of relevant events that led to the parties' divorce, arguably for the purpose of explaining what he felt was the "critical importance" of the Catholic school environment for the children.

The family court conducted a final hearing on all pending motions on April 9, 2025. At the hearing, Father referred to Mother's allegedly immoral behavior and advocated for the children to attend school at St. Joseph's because he believed it was in their best interest to be in an environment where "morality is taught as something that is non-negotiable." However, Father admitted that the parties did not expressly account for the children attending St. Joseph's beyond eighth grade in their Agreement because at the time it was drafted, the high school was not open, and the school served only kindergarten through eighth grade. He further testified that the children had expressed their respective desires not to attend St. Joseph's for high school and that they would prefer to attend a different school. Upon cross-examination, Father admitted that he filed his motion to enforce not for the current school year, because St. Joseph's high school was still not open and no students were enrolled. Rather, he stated his motion and his request for relief were for the following school year and were intended to prevent any prospective issues.

Also at the final hearing, Mother withdrew her request to modify the parenting plan because Father had obtained a new residence, and the parties resumed operating under their 50-50 parenting plan. However, Mother still sought sole decision-making authority for the children's education. Mother testified that she had originally agreed that the children would attend St. Joseph's for high school, but because the oldest child was already enrolled in

public school and liked it, she asked that the children be able to choose where they attend school in the future. Because of their ages, the court interviewed the parties' two oldest children in-camera about their preferences regarding school.

On April 25, 2025, Father filed an objection to Mother's motion for attorney's fees, arguing that Mother sought reimbursement for nearly all her legal work even though some of her filings were withdrawn.

By order entered on June 12, 2025, the family court made the following findings of fact and conclusions of law:

- The information alleged by Father in his Submission was irrelevant to the April 9, 2025, hearing and the motions pending before the court, and as such, would be given such weight.
- The Submission shall not be disseminated to any third parties not involved in the case. Upon sufficient credible evidence of a violation, the violating party will be fined $5,000 per occurrence.
- It was disclosed to the court during its in-camera interviews of the two oldest children that the parties' children never attended St. Joseph's until fall of 2024, and the oldest child never attended at all, as they had been homeschooled since 2020.
- The court was under the incorrect assumption that the children had attended St. Joseph's all along.
- Mother sought reimbursement for attorney's fees she incurred as the result of responding to Father's multiple filings, noting some of the filings were unnecessary or frivolous.
- Father filed an interlocutory appeal to the Intermediate Court of Appeals, which was dismissed for lack of jurisdiction, but caused Mother to pay counsel for a response.
- Mother had attorney's fees that totaled over $5,500, not including fees for the final hearing and any subsequent work after the hearing.
- Pursuant to *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), Father has asserted unfounded claims for vexatious purposes that delayed attention from the valid claims and required responsive pleadings from Mother. Such filings were improper in nature, frivolous, and not in accordance with the standard practice of law, and although Father was not represented by counsel, he chose to file these documents. Father should accept the results that his filings caused. Most of Father's pleadings after the initial petition were irrelevant, in poor taste, or were inappropriately asking the court to divulge how it makes its rulings or seeking legal advice. A number of Father's pleadings would not have been filed had he obtained counsel.

4

- Mother's counsel's $350 hourly fee was reasonable in light of her years of experience as a family law practitioner. Father was employed and could afford to pay Mother's legal fees, which were exacerbated by Father's conduct during the proceedings. The case became litigious due to Father's conduct, and the fees are not excessive.
- Father shall reimburse Mother $2,450 for attorney's fees. The court excluded the $700 fee for responses to Father's initial pleading and for Mother's counter-petition for modification.
- Father shall pay Mother no less than $350 per month until the attorney's fees are paid in full.
- Father's motion to enforce divorce decree and motion for default judgment was denied.
- The issue of high school in the Agreement is silent and is, therefore, not enforceable by the court, as the Agreement referred to the school as "St. Joseph Catholic School" and "high school" was not referenced.
- The parties could have included separate language in their Agreement stating that the children would attend St. Joseph's high school, if opened, and, in the alternative, stated where the children would go to school until such time, but that language is not present in the Agreement.
- Father's motion for summary judgment was denied.
- The parties will continue to exercise shared decision-making authority for education. If the parties cannot agree on St. Joseph's high school, the default will be the local public high school, Musselman High School. The children will attend St. Joseph's through eighth grade.
- There was no change in circumstances warranting the modification requested by Mother; the petition for modification was denied.
- The previous 50-50 parenting plan shall remain in place.

Father now appeals the June 12, 2025, final order.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father raises seven assignments of error. Because several are similar, they will be consolidated for clarity and efficiency. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly"); *Jacquelyn F. v. Andrea R.,* No. 16-0585, 2017 WL 2608425, at *3 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues).

In Father's first assignment of error, he asserts that the family court misapplied West Virginia Code § 48-9-209 (2024) by recharacterizing his motion to enforce the parties' divorce decree as a custodial modification without making a threshold finding of material change in circumstances. This argument lacks merit. West Virginia Code § 48-9-402(b) (2022) addresses a family court's authority to modify parenting plans when there has been no showing of changed circumstances and states as follows:

> (b) The court may modify any provisions of the parenting plan without the showing of the changed circumstances required by § 48-9-401(a) of this code if the modification is in the child's best interests, and the modification:
> (1) Reflects the de facto arrangements under which the child has been receiving care from the petitioner, without objection, in substantial deviation from the parenting plan, for the preceding six months before the petition for modification is filed, provided the arrangement is not the result of a parent's acquiescence resulting from the other parent's domestic abuse;
> (2) Constitutes a minor modification in the plan;
> (3) Is necessary to accommodate the reasonable and firm preferences of a child who, has attained the age of 14; or
> (4) Is necessary to accommodate the reasonable and firm preferences of a child who is under the age of 14 and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference;
> [. . .]

Here, the family court did not err or abuse its discretion when it ruled that the children may attend public high school if the parties are unable to reach an agreement on the issue, as the above-cited section grants the court such authority. Therefore, we find no basis in law to warrant relief on this issue.

Next, in Father's second, fifth, sixth, and seventh assignments of error, he contends that the family court erred when it threatened him with sanctions for a sealed filing made in good faith, disregarded his rights as a pro se litigant, that the court's final order lacked due care and consistency, and that the court substituted its own legal theory to justify non-enforcement of the parties' July 18, 2024, final divorce order. More specifically, Father argues that the court's dissemination ban relating to his submission was unconstitutional

and imposed without notice. We disagree. West Virginia Code § 48-1-303(c) (2001) states, "[w]hen sensitive information has been disclosed during a hearing or in pleadings, evidence or documents filed in the record, the court may, sua sponte or upon motion of a party, order such information sealed in the court file." Additionally, West Virginia Code § 51-2A-7(a) (2013) gives family courts the authority to "manage the business before them," "compel and supervise the production of evidence," and "prevent abuse of process." Therefore, we cannot conclude that the family court abused its discretion or disregarded Father's constitutional rights when it ordered him not to disseminate confidential information about Mother.

Finally, in Father's third and fourth assignments of error, he asserts that the family court improperly awarded attorney's fees to Mother for her withdrawn, denied, or procedurally improper motions, and failed to include findings of fact of vexatious or oppressive conduct by Father as required by West Virginia Code § 48-1-305(c) (2001), which states as follows:

> When it appears to the court that a party has incurred attorney fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney fees and costs to the other party.

We disagree with Father. The family court found that Father made unnecessary and/or frivolous filings, filed an interlocutory appeal that resulted in dismissal, filed pleadings that were not germane to the issues before the court, and filed documents regarding Mother's parental fitness and pattern of conduct that were done in very poor taste solely to humiliate her. The family court further found that if Father had been represented by counsel, a number of his filings which created work for Mother would not have occurred. Therefore, we conclude that the family court *did* include findings of fact of vexatious or oppressive conduct by Father.

Additionally, the Supreme Court of Appeals of West Virginia has held the following:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either

7

party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). Here, the family court conducted a thorough analysis of the *Banker* factors and determined that Mother should be awarded attorney's fees. Because the family court appropriately weighed the factors set forth in West Virginia Code § 48-1-305(c) and *Banker*, we cannot find that the court abused its discretion, as the record below supports the court's findings.

Accordingly, we affirm the family court's June 12, 2025, order.

Affirmed.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

8